Plaintiff, a taxpayer of the City of Hoboken, brings suit to compel the defendants to file with the city clerk for public inspection a report made by the defendant Shea to the defendant Borelli, Director of Public Safety, of an investigation made by the defendant Shea as investigator to the Director of Public Safety. Plaintiff also seeks to compel the above-named defendants to make a complete discovery of their actions in connection with the resolution of the governing body appointing the said defendant Shea as investigator and the subsequent resolution appropriating funds in payment of the investigation. Plaintiff further demands that the payment of $2,000 made to Shea pursuant *Page 548 
to the aforesaid resolutions be declared illegal and that Shea be made to return the money to the city treasurer; that Shea account for all moneys paid him; that Shea be restrained from taking any action against the City of Hoboken for additional compensation; that defendants be restrained from altering, destroying or secreting the aforesaid report.
The complaint alleges that on September 2, 1947, the Board of Commissioners of the City of Hoboken adopted a resolution whereby the defendant Shea was appointed special counsel to the defendant Borelli as Director of Public Safety,
"to probe the affairs and conditions of the Police Department, to investigate the acts of the Police Department regarding the suppression or protecting of gambling, to investigate the efficiency of the Police Department, and whatever other steps are necessary to the protection of merchants and business men as well as other matters that are necessary for the best interests of the people of the City of Hoboken."
The complaint further alleges that a subsequent resolution was adopted by the Board of Commissioners whereby the sum of $2,000 was appropriated and paid to the defendant Shea.
The complaint further asserts that the defendant Shea undertook to probe certain conditions in the City of Hoboken regarding the conduct of officers and employees of the city and took statements and affidavits in connection therewith, all of which were incorporated in a report made to the defendant Borelli; that the report sets forth conditions in the city which adversely affect the taxpayers of the municipality; that no copy of the report was filed with the city clerk; that defendant Borelli has arbitrarily and without just reason refused to file the report with the city clerk or to release the report for examination or publication, although demand has been made of him; that defendants are conspiring to prevent the taxpayers and citizens of Hoboken from learning of the state of affairs which exist in the city, and public funds have been illegally appropriated and wasted thereby.
The complaint further alleges that Shea intends to make a claim for additional compensation by reason of said probe although no public benefit has been derived therefrom. *Page 549 
There are three motions now before the court. The defendant Shea is prosecuting one motion seeking a dismissal of the complaint against him on the ground that the complaint fails to state a claim upon which relief may be granted. He contends that his acts were as special counsel of the city, that he is accountable only to the city for his actions, that the plaintiff does not charge him with failure to perform the terms of his agreement, and that the complaint is barred by the statute.R.S. 2:80-7 (chapter 381, P.L. 1948). The defendant Borelli has move for summary judgment based on an affidavit that on January 18, 1949, he submitted a memorandum to the Board of Commissioners which was received by that board and which reads as follows:
"After careful study and analysis of the Official Probe Report submitted to me by Special Probe Counsel Albert J. Shea, I find that no offense or wrongdoing was committed by any official or citizen which would warrant any action on my part."
The third motion is by the plaintiff whereby he seeks an order to take depositions of both defendants pursuant to Rule 3:26-1.
Defendants Borelli and Shea contend that the suit is in the nature of a mandamus and that the mandamus will never lie to compel an act unless the duty to do so is clear and specific, and further, that the filing of the report is not a ministerial act but one in which the defendant Borelli has complete discretion.
No statute has been cited which specifically provides for an inspection of public records. The right of a citizen to inspect public records, in the absence of a statute authorizing such inspection, has been the subject of several decisions in this State. In Ferry v. Williams, 41 N.J.L. 332, the right to inspect recommendations for saloon licenses was vindicated after a careful analysis of the authorities upon the ground that any citizen as a taxpayer had an interest in the proper observance of the city charter which license saloons and that he might, under certain circumstances, litigate for its protection; and in order to ascertain whether those circumstances *Page 550 
existed, he was entitled, when actuated by the motives shown in that case, to the inspection sought. This decision limited the right to cases where inspection was necessary as an aid to litigation which the petitioner was entitled to maintain. This right to inspection has been extended further. In Higgins v.Lockwood, 74 N.J.L. 158, it was held that a voter was entitled to a mandamus to secure an inspection of the registry lists for an election, although his only interest was as a voter and no litigation was intended to which the inspection might be an aid. And in Fagan v. State Board, 80 N.J.L. 516, it was held that a taxpayer has the right to inspect railroad schedules filed pursuant to public law in the office of the State Board of Assessors. And in the recent decision of the Appellate Division in the case of Taxpayers Association v. City of Cape May,2 N.J. Super. 27, 64 A.2d 453, it was held that a taxpayer, in the face of a proposed tax increase, was entitled to a general examination of the public records of a municipality.
It will be noted that in the above cases the applicants' claims for inspection were confined to what may strictly be deemed "public records." The Legislature has defined the term "public records" to mean "any written or printed book, document or paper, map or plan, which is the property of the state or of any county or municipality or part thereof, and in or on which any entry has been made or is required to be made by law, or which any officer or employee of the state or of a county or municipality has received or is required to receive for filing or recording." (Italics supplied.) R.S. 47:3-1.
In the Ferry, Higgins, Fagan and Cape May cases, all cited by the plaintiff, the particular records, namely, liquor licenses, registry lists, railroad returns and municipal records, would come within the scope of the above statutory definition of public records. The question here is: Does the report of an investigation come within the statutory definition. No statute has been called to my attention, nor have I found any, which requires such a report to be filed or recorded with the municipal clerk. It is my opinion that the statutory definition *Page 551 
of "public records" (R.S. 47:3-1) does not include the information, whether reduced to written form or not, upon which the head of a department relied in determining upon a course of action. See People v. Fosdick, 126 N.Y.S. 252.
At the oral argument plaintiff's counsel in support of his contentions mentioned the case of Marbury v. Madison, 1Cranch 137, and the trial of Aaron Burr. However, in Marburyv. Madison, supra, the Supreme Court of the United States compelled the acting secretary of state to testify whether certain commissions from the executive had ever been in his office, only because "that could not be a confidential fact;" and declared, that if there was any thing confidential, or the secretary thought any thing was communicated to him in confidence, he was not obliged to disclose it.
The ruling of Chief Justice Marshall upon the trial of Aaron Burr was merely that a subpoena duces tecum might be issued to the president of the United States for a letter addressed to him by a military officer who was to be a witness against the defendant; leaving the question of the production of the letter, if containing any matter which in the judgment of the president could not be disclosed without injury to the public, to be considered on the return of the subpoena. 1 Burr's Trial,
177-189. And he never had occasion to decide that question. See 2Burr's Trial, 533-539. See, also, Worthington v. Scribner,109 Mass. 487; 12 American Reports 736.
In a taxpayer's suit in Matter of Egan v. Board of WaterSupply of the City of New York, 205 N.Y. 147, 98 N.E. 467, Judge Bartlett said:
"It may not be denied that there are papers concerning governmental matters which are properly treated as secret and confidential, such for example as diplomatic correspondence and letters and dispatches in the detective police service or otherwise relating to the apprehension and prosecution of criminals;"
See, also, People v. Fosdick, supra.
The allegations relating to plaintiff's right to an inspection of the report of the investigation appear to be within the scope of the language of Judge Bartlett. *Page 552 
This matter has given the court grave concern. For in a democracy, the citizens generally have the right to know the truth about all parts of their government, because, without public knowledge of the realities of governmental activities, essential reforms of those activities will be hindered. However, under our theory of government, the doctrine of separation of powers dictates that each branch of the government may function within its proper sphere without interference from the other.Cf. Haines v. Burlington County Bridge Commission,1 N.J. Super. 163, 63 A.2d 284, at p. 290. The defendant Borelli is a member of the Board of Commissioners of the City of Hoboken which functions, pursuant to legislative authority, in a legislative and executive capacity. The judiciary cannot usurp the powers of the legislative or executive departments of government.
It may well be that publication of a report such as the one under discussion would be in the public interest. Its suppression may do more harm than good. Certainly it would appear, in the absence of the publication of the report of the investigation, the citizens are entitled to an explanation as to why it is kept from public knowledge. It may be that a disclosure may do no harm but might even be productive of good results. On the other hand, it may be that such a disclosure would be harmful to the public interest. Therefore, it appears that the matter of the publication of the report involves the exercise of discretion upon the part of the defendant Commissioner Borelli, or the governing body, and the court has not the power to compel the manner in which that discretion shall be exercised. To do so would be to substitute the judgment and discretion of the court for that of Commissioner Borelli, or the governing body. The responsibility rests with the municipal officials and not with the court.
As to plaintiff's attack on the validity of the aforesaid resolutions and the actions of the defendants Shea and Borelli pursuant thereto, it appears that the municipal corporation is an indispensable party. Cf. Murphy v. West New York, 130 N.J.L. 341. Permission will be granted to the plaintiff *Page 553 
to join the municipal corporation pursuant to Rule 3:21. The foregoing makes it unnecessary to pass on the applicability ofR.S. 2:80-7 at this time.
In view of the foregoing the complaint will be dismissed unless the plaintiff, within ten days, moves to join the City of Hoboken as a party defendant.
Plaintiff's motion to take depositions will be held in abeyance.