THE CITY OF NEWARK, RESPONDENT-APPELLANT, v. DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, AND R. H. MACY & CO., TRADING AS L. BAMBERGER & CO., PETITIONERS-RESPONDENTS.

Argued March 19, 1951—Decided April 9, 1951.

*Mr. Charles Handler* argued the cause for appellant. *Mr. Vincent J. Casale* on the brief.

*Mr. Herbert J. Hannoch* argued the cause for respondent R. H. Macy & Co., trading as L. Bamberger & Co. *Mr. William S. Myers* on the brief. (*Messrs. Hannoch & Lasser,* attorneys).

The opinion of the court was delivered by

Case, J.   The taxing district of the City of Newark placed a flat assessment of $6,000,000 for the tax year 1949 upon the tangible personal property of the respondent R. H. Macy & Co., trading as L. Bamberger & Co. The taxpayer appealed to the Essex County Board of Taxation where the appeal was dismissed without prejudice. It thereupon appealed to the Division of Tax Appeals and, before hearing, obtained from the Division an order directing the city to answer two interrogatories, namely:

"1. State what portion of the assessment of $6,000,000, under review herein, levied for the year 1949 comprised stock in trade.

"2. State what portion of the assessment of $6,000,000, under review herein, levied for the year 1949 comprised office furniture and other tangible personal property."

The city forthwith took the present appeal to the Superior Court, Appellate Division. We have certified the appeal on our own motion.

There are two questions: first, whether the order was the proper subject of an appeal at that stage of the proceedings; second, whether the order under appeal is effective to compel an answer.

The first question presents little difficulty. The appeal is from an interlocutory order. *Rule* 4:2–2 specifies that appeals may be taken from certain orders or judgments, whether or not interlocutory, but the order under review is not one of such. Clearly, the order does not relate to an injunction, has no concern with a receivership, does not go to jurisdiction over the subject matter or the persons, and is not necessary in the preservation and maintenance of the *res* or *status quo* or in the prevention of irreparable injury; and the appeal, if sustained, would not terminate the litigation. The subject matter of the litigation before the Division of Tax Appeals was an appeal from an action of the Essex County Board of Taxation (*R. S.* 54:2–35). The jurisdiction of the Division over that subject matter and over the parties is not questioned. A part of appellant's argument is that the burden of proof is upon a taxpayer on an appeal from an assessment to prove overassessment, that this constitutes a *status quo* and that compelling the city to give the desired information would disturb that *status quo*. We do not follow the reasoning. The burden is and will remain upon the taxpayer regardless of the information demanded by the interrogatories. The allowing of the interrogatories was procedural and tended to elicit information which, while leaving the taxpayer still with the burden of proof, would provide matter pertinent to the issue. Intermediate processes incident to litigation should not be converted into impediments to speedy trials by innumerable appeals with consequent vexatious delays and miscarriages of justice. *Hopper v. Gillet*, 105 *N. J. L.* 150 (*E. & A.* 1928).

Therefore, the appeal might well be dismissed; but as the litigated issue is one of public importance and is here on our own certification we have concluded to dispose of it upon the merits.

■ *R.. S.* 54:2–14 provides that the Division of Tax Appeals may make rules, orders and directions as it may deem necessary to carry into effect the objects of the statutory chapter and may make reasonable rules regulating the manner, form, time, terms and conditions of appeals made to it, and *R. S.* 54:2–16 provides that hearings shall be open to the public and the proceedings shall be conducted in accordance with such rules of evidence and procedure as the board from time to time may prescribe. The granting of that authority appears to be entirely reasonable and to be directed toward the desired end of having litigation there, as elsewhere, conducted in an orderly manner, avoiding unnecessary expense, excessive time and confusion. Division rule XIII, adopted pursuant to that statutory authority, provides:

"Interrogatories, or bills of particulars, may be demanded upon order of the Division, sitting in its entirety, or as a panel, after four days' notice of demanding same to the adverse party."

The Legislature has adopted a scheme in the making and tabulating of assessments which calls upon the assessing authorities to compile and file a table of pertinent taxing data. *R. S.* 54:4–52 provides that the county board of taxation shall, on or before April tenth, fill out a table of aggregates copied from the duplicates of the several assessors, enumerating various items of which the fifth is as follows:

"(5) The value of the personal property assessed, stating in separate columns:
"a. Value of household goods and chattels assessed;
"b. Value of farm stock and machinery assessed;
"c. Value of stocks in trade, materials used in manufacture and other personal property assessed under section 54:4–11;
"d. Value of all other tangible personal property used in business assessed."

The assessors of the City of Newark, pursuant to law, filed their duplicates with the Essex County Board of Taxation. The assessments were assembled by assessment districts. At

the end of the group of assessments comprising a particular district there appears a summary analysis, *in total figures,* of the assessments for that district substantially in the form required by the statute. The particular assessment district with which the Bamberger figures are placed gives the totals (of the group, not of the individual taxpayers) showing in separate columns the gross assessments (1) of machinery used in manufacture, (2) of stocks in trade and materials used in manufacture and (3) of office furniture and all other tangible property. There are no totals in the columns devoted to household furniture and to farm stock and machinery, probably for the reason that that group of assessments has to do with commercial enterprises which presumably did not have ratables of the categories indicated in the omitted columns.

Following out that general scheme, the City of Newark, before making the assessments, placed in the hands of the Bamberger Company a printed form of return for personal property taxes, prepared for the purpose of disclosing a breakdown, according to the statutory classification, by the taxpayer of its personal property; and that form was filled in and filed. We are left to assume that the practice followed in this particular instance was general and that the city taxing authorities retained the information thus returned. So it comes about that individual taxpayers file their estimates of values in accordance with the statutory classification, that those returns were solicited by and are in the possession of the city and that either upon the basis of them or of information otherwise obtained the city makes a return, not of the figures separately allocated to each taxpayer, but a gross total which presumably is the sum of figures given by or allocated to the individual taxpayers. Further, the Legislature, within what it has deemed to be a compliance with the constitutional requirement (*Article* VIII, *Sec.* I, *par.* 1) that property shall be assessed for taxation under general laws and by uniform rules, has directed (*R. S.* 54:4–11) that

"Personal property, consisting of stocks in trade * * * shall be estimated at the average of such personalty located in the taxing district during the year preceding the date as of which the assessment is made, or the average for such portion of the year that the property may be in the possession of the person assessed."

Thus, in the case of stocks in trade there is a departure from the provision of *R. S.* 54:4–1 that personal property shall be subject to taxation at its true value with reference to the amount owned on October first in each year. The only information given the Bamberger Company is that its total assessment for personal property is $6,000,000; and that figure includes stock in trade, which is based upon an average value from October first to October first, and office furniture and other tangible personal property, which is based upon its value as of October first. Having regard to the various statutory and constitutional requirements, we think it is reasonable that the taxpayer should be given the information sought by the interrogatories to the end that the taxpayer shall have opportunity to ascertain whether the two classes of ratables have been properly valued in accordance with the statutory scheme.

It is the city's further contention that, assuming for the sake of argument interrogatories were allowable in this type of tax case, the particular interrogatories here involved are not proper because they involve the mental processes, impressions, conclusions and opinions of the assessor in arriving at this assessment, that the information sought is the "workproduct" of the assessor which, under the cases, is not evidential. But this argument confuses the means with the result. The figures asked for are a result. The city is not asked to disclose the means by which the result was reached. The figures appended to the sheets—which, for the lack of a descriptive phrase in the record, we shall call a part of the assessor's duplicate—giving the group of commercial assessments in which the Bamberger assessment is entered shows a total of the ratables of those taxpayers comprehended within the group "Machinery used in Manufacture" to be $305,000, "Stocks in

Trade and Materials used in Manufacture" $12,032,200,
"Office Furniture and All Other Tangible Property" $36,173,-
200, total $48,510,400. The odd amounts thus appearing
in the totals indicate that the totals are not merely a gross
estimate by the assessor but are the sums of the items laid
against the individual taxpayers. Those figures are not a
work-product. They constitute data which the legislative
scheme reasonably anticipates. Thus, presumably, the amount
assessed against Bamberger for its stock in trade is a deter-
mined figure in the city records; so also as to the office furni-
ture and other tangible property; and those figures are there,
not as a work-product, but because they are items within the
legislative scheme.

There is nothing before us to indicate that the city will
have the least difficulty in giving the requested information.
The interrogatories should be answered. What the weight of
that information will be in determining the final issues of
value we have no means of knowing, but on the record as it
stands we consider that the Division was within its authority
in making rules comprehensive of interrogatories and answers
and in applying those rules as it did in the making of the
order in this case.

The order under review will be affirmed, with costs to the
respondent.

*For affirmance*—Chief Justice VANDERBILT, and Justices
CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and
ACKERSON—7.

*For reversal*—None.