FELIX A. TAGLIABUE, PLAINTIFF-RESPONDENT, v. TOWN-
SHIP OF NORTH BERGEN IN THE COUNTY OF HUD-
SON, A MUNICIPAL CORPORATION OF THE STATE OF
NEW JERSEY, JOHN J. ROE, DIRECTOR OF REVENUE
AND FINANCE OF THE TOWNSHIP OF NORTH BER-
GEN, AND CHAIRMAN OF THE BOARD OF ASSESSORS
OF NORTH BERGEN, JOSEPH S. RUBENSTEIN AND
FRED RITTER, DEFENDANTS-APPELLANTS.

Argued February 4, 1952—Decided February 25, 1952.

*Mr. Nicholas S. Schloeder* argued the cause for appellants.

*Mr. Joseph C. Glavin* argued the cause for respondent (*Messrs. Burke, Sheridan & Hourigan,* attorneys; *Mr. James Rosen* on the brief).

The opinion of the court was delivered by

WACHENFELD, J. A summary judgment was entered at the trial level in favor of the plaintiff against the Township of North Bergen in a proceeding brought in lieu of a prerogative writ of *mandamus,* its purpose being to compel the township to permit the taxpayer to inspect certain records in the office of the tax assessors.

The plaintiff taxpayer appealed to the Hudson County Tax Board for a reduction of his assessment, alleging it was in excess of true value and discriminatory. To assist in establishing this allegation, he sought an inspection of certain cards in possession of the board of assessors of North Bergen and made a written demand therefor. Permission being refused, he brought this action to compel the production of the cards and moved for a summary judgment pursuant to *Rule* 3:81–4.

The matter was heard on affidavits and counter-affidavits on behalf of both parties. No testimony was taken but the cause was argued before the court below, resulting in the granting of the plaintiff's motion for summary judgment. This appeal is from the judgment so entered.

The litigation involves cards prepared by a realty appraisal company on a re-survey of all the property of the township, made pursuant to a contract dated March 24, 1950, for which the township paid the sum of $50,000. The information so acquired admittedly was considered by the assessors in arriving at the assessments for the year 1951.

This is the second step in this litigation, which first involved the tax year of 1950, when the township increased, by varying sums and in substantial amounts, the assessments on certain properties of the plaintiff, and he appealed. He was joined by other owners of industrial property similarly affected. By consent, it was agreed this case was to be controlling, the resulting judgment to be applicable to all other appealing taxpayers in the same class. There, as here, a request was made to examine the card records in the hands of the assessors; it was refused and litigation ensued, the court holding the documents were public records and subject to inspection. An examination was permitted but the result, it is alleged, was nugatory as the cards at that time had no information of importance on them. The township appealed and the matter was certified here. We held the question moot since the examination had been given, and the appeal

was dismissed. *Tagliabue v. Tp. of North Bergen*, 6 *N. J.* 495 (1951).

Prior to the assessing date for 1951, an entire survey, including residential properties as well as industrial, had been completed and, as noted above, demand was again made for an inspection; when refused, suit was instituted in lieu of prerogative writ, resulting in a judgment in favor of the taxpayer, the court holding the cards were public records and properly subject to his examination. The execution of the judgment so entered, however, was stayed in order to permit the township to file this appeal, which was certified here by us.

It is first asserted the cards sought to be inspected are not public records within the meaning of the statute or the governing laws. *R. S.* 47:3–1 provides in part as follows:

"In construing the provisions of this section and other laws appertaining thereto the words 'public records' shall, unless a contrary intention clearly appears, mean any written or printed book, document or paper, map or plan, which is the property of the state or of any county or municipality or part thereof, *and* in or on which any entry has been made or is required to be made by law, or which any officer or employee of the state or of a county or municipality has received or is required to receive for filing or recording."

This paragraph must be construed in conjunction with the many related, kindred provisions of the statute in respect to "public records." We discern no mandate embracing the information contained in the controversial documents within the statutory language of entries "made or * * * required to be made by law." The cards were the result of a contract between the township and a third party as an extracurricular endeavor to facilitate the new tax program contemplated by the public body. Admittedly they were paid for by the taxpayers' money but the mere paying by the township does not of itself constitute them public records. All information and documents kept by the municipality are not public records, yet presumably all are paid for directly or indirectly with public funds.

We cannot, under the circumstances, classify the cards in controversy as a public record. *Stack v. Borelli*, 3 *N. J. Super.* 546 (*Law Div.* 1949). There an individual was appointed to probe and investigate the affairs and conditions of the Police Department of Hoboken and to make a report thereon to the Director of Public Safety. In that effort testimony was taken, statements and affidavits were filed, and the written report was made. The plaintiff sought to compel the filing of this report with the city clerk for public inspection. The court, in disposing of the issue, said:

"In the *Ferry*, *Higgins*, *Fagan* and *Cape May* cases, all cited by the plaintiff, the particular records, namely, liquor licenses, registry lists, railroad returns and municipal records, would come within the scope of the above statutory definition of public records. The question here is: does the report of an investigation come within the statutory definition? No statute has been called to my attention, nor have I found any, which requires such a report to be filed or recorded with the municipal clerk. It is my opinion that the statutory definition of 'public records' (*R. S.* 47:3–1) does not include the information, whether reduced to written form or not, upon which the head of a department relied in determining upon a course of action."

■ This conclusion, however, does not mean that, in all cases, a taxpayer has no right to an inspection such as is here sought. The right is not necessarily limited to public records but may exist without that classification, of which more hereafter.

Having decided the disputed documents are not public records, we need not consider the appellants' second point, which is premised upon a finding to the contrary and would apply only if an opposite determination had been made.

■ Lastly, while conceding that the ordinary rules pertaining to discovery should be a guidepost for the exercise of judicial discretion in this respect, as provided for in *Rule* 3:26–2, it is argued the cards were the work-product of the assessors, not open to public inspection and not evidential. In support of this contention, the appellants cite and mainly rely upon *Newark v. Div. of Tax Appeals*, 7 *N. J.* 8 (1951).

The information on the cards was not compiled by the assessors and so could hardly be said to be their work-product, nor does it reflect their opinion as to the value of the taxpayer's property. The cards were not prepared in anticipation of litigation but were part of a resurvey of all the property of the township, both industrial and residential, made pursuant to a contract entered into well in advance of the assessment and prior to the institution of the judicial contest which subsequently ensued. It is true they were consulted in levying the assessments from which the plaintiff has appealed to the county tax board and so figure in those appeals. This is, however, merely incidental to their prime purpose, which was the revision of the over-all tax program of the entire municipality, not the assistance some of them might, at a future time, render in opposing or sustaining the reduction of assessments on individual properties.

■■■ The taxpayer here obviously is not seeking knowledge as to how the assessors arrived at their opinion as to the value of the property in question. He is trying to establish information already paid for by and in the possession of the township and to deprive him of the right to examine these cards would impose an unjust hardship in that effort. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. Either party, under appropriate circumstances, may compel the other to disclose relevant facts if, by so doing, prejudicial and inequitable surprises are eliminated and the truth is bared and made available.

In *Bead Chain Mfg. Co. v. Smith,* 1 *N. J.* 118 (1948), commenting on a similar situation, the Chief Justice said:

"The presentation of the truth to the court is paramount; it must proceed unimpeded and unhampered despite claims of prying, where, as here, there exists the means of affording adequate protection against unwarranted intrusion and invasion of the rights of one party by another party."

The relief granted by the court below was proper and the judgment is affirmed for the reasons here stated.

BURLING, J. (concurring). I concur in the conclusions of the majority to affirm, with the following exception.

I do not agree with the conclusion that the cards included in the appraisal report and subject of the present controversy were not public records. They were, in the language of the statute (*R. S.* 47:3–1) "written or printed * * * documents * * * which (are) the property of the * * * municipality has received * * * for filing * * *." They were filed with the township clerk and, as the opinion states, they were the property of the municipality. Further, no "contrary intention clearly appears" (*R. S.* 47:3–1), *i. e.*, no intention *not* to make them public records clearly appears, as was the situation in *Slack v. Borelli,* 3 *N. J. Super.* 546 (*Law Div.* 1949).

Mr. Justice HEHER joins in this memorandum.

HEHER and BURLING, JJ., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.

*For reversal*—None.