47 N.J. Super. 271 (1957)
136 A.2d 22
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANCIS JOSEPH McLAUGHLIN AND HARRY F. DOWNES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1957.
Decided November 8, 1957.
*272 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Warren Lloyd Lewis argued the cause for appellant McLaughlin.
Mr. Leo I. McGough argued the cause for appellant Downes.
*273 Mr. Frank J.V. Gimino, Assistant Prosecutor, argued the cause for respondent (Mr. Frederick T. Law, Hudson County Prosecutor).
The opinion of the court was delivered by JAYNE, J.A.D.
This appeal transports to us for appellate review the judgments rendered in conformity with the verdict of a jury convicting the above-named defendants of the commission on August 3, 1953 of the acts alleged in the second count of an indictment here referred to as No. 473, and also in a companion indictment designated as No. 474 presented against them by the grand jury of the County of Hudson.
It will suffice to present the prefatory information of the case in a summary fashion.
The second count of indictment No. 473 alleged that the defendants
"* * * willfully and unlawfully did falsify a certain certificate of an Extract of Birth Recording of the Board of Health and Vital Statistics of Hudson County, New Jersey, then and there being a part of the records of the said Board of Health and Vital Statistics of Hudson County, New Jersey, in that they, the said FRANCIS JOSEPH McLAUGHLIN, HARRY F. DOWNES and JOHN BROWN did falsely and maliciously purport to certify that one Ben M. Horwech, Registrar, and John J. MacDonald, Certifying Clerk, of the said Board of Health and Vital Statistics, did in fact certify that one Jose Antonio Fernandes was born on the fifteenth day of December in the year nineteen hundred fifteen at Jersey City, New Jersey, according to the records of the said Board of Health and Vital Statistics, under Index No. 9336, Volume No. 32, and that the father of the said Jose Antonio Fernandes was one Jose Batista Fernandes, and that the mother of the said Jose Antonio Fernandes was Dolinda Barbosa; the said FRANCIS JOSEPH McLAUGHLIN, HARRY F. DOWNES and JOHN BROWN then and there well knowing the same to be false, fraudulent and untrue, contrary to the provisions of N.J.S. 2A:136-1, against the peace of this State, the Government and dignity of the same."
Indictment No. 474 averred that the defendants
"* * * feloniously did forge and counterfeit a certain paper writing purporting to be a certification of an Extract of Birth *274 Recording according to the records of the Board of Health and Vital Statistics of Hudson County, New Jersey, and to be signed by one John J. MacDonald, a certifying Clerk of the said Board of Health and Vital Statistics of Hudson County, New Jersey, and to be sealed, published and declared by one Ben M. Horwech, Registrar of the said Board aforesaid, and the said John J. MacDonald, as and for a true and lawful certificate of the said Board aforesaid, the tenor of which said forged and counterfeited Extract of Birth Recording is as follows, that is to say:
 `B.H. 810-53 No. 2619
 BOARD OF HEALTH AND VITAL STATISTICS OF HUDSON
 COUNTY, N.J.
 2857 Boulevard, Jersey City 6, N.J.
 Edward W. Greene Clerk of Board
 Ben M. Horwech Registrar of Vital Statistics
 EXTRACT OF BIRTH RECORDING
 Issued at Jersey City, N.J. August 1, 1953
THIS IS TO CERTIFY THAT JOSE ANTONIO FERNANDES was born on the 15th day of December in the year 1915 at Jersey City, N.J. according to the records of this office under Index No. 9336 Volume No. 32
 Father: Jose Batista Fernandes
 Mother: Dolinda Barbosa
 Ben M. Horwech Registrar
 (SEAL)
 Signature of Certifying Clerk:  John J. MacDonald
 IMPORTANT
This certificate is invalid unless bearing the personal signature of the certifying clerk under the Seal of this Office.'
with intent on the part of the said FRANCIS JOSEPH McLAUGHLIN, HARRY F. DOWNES and JOHN BROWN, to prejudice, injure, damage and defraud, contrary to the provisions of N.J.S. 2A:109-1, against the peace of this State, the Government and dignity of the same."
We pause to explain that the defendant John Brown, also named in the indictments, was granted a severance, and that due to the indigence of the appellants, assigned counsel have prosecuted, and ably so, this appeal in their behalf with the aid of a truncated record supplied at public expense. The grounds of appeal, however, are of a legalistic nature and the record adequately projects them.
It is noticeable that the second count of indictment No. 473 is designed to allege a violation of N.J.S. 2A:136-1 which, in its pertinent part, provides that:
*275 "Any person who steals, embezzles, takes away, alters, withdraws, falsifies, mutilates or voids any public record, or any part thereof * * * is guilty of a misdemeanor * * *."
It is equally apparent that indictment No. 474 is edited to charge an infraction of N.J.S. 2A:109-1, which in present relevancy ordains that:
"Any person who, with intent to prejudice, injure, damage or defraud any other person:
(a) Falsely makes, alters, forges or counterfeits any record or other authentic matter of a public nature or character, * * *
Is guilty of a high misdemeanor."
Immediately to simplify this announcement of our conclusions, we can at once state that the evidence failed to reveal that the paper writing, identified at the trial as exhibit S.1, a facsimile of which is embodied in indictment No. 474, and which is ostensibly denominated "Extract of Birth Recording," was in fact a public record or any part thereof. See N.J.S.A. 47:3-1; 47:3-16; Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954); Stack v. Borelli, 3 N.J. Super. 546, 550 (Law Div. 1949); 76 C.J.S. Records § 115, p. 121; 23 R.C.L. 155, § 2; Black's Law Dict. (3d ed.), p. 1505.
The "Extract" with which we are here concerned is not a public record comprehended by N.J.S.A. 26:8-28 or 26:8-25. Of decisive consequence is our conclusion that the writing is not a public record or part thereof within the contemplation and import of N.J.S. 2A:136-1 for the violation of which these defendants were specifically accused and convicted under indictment No. 473. This judgment of conviction is accordingly reversed.
The controversial question predominantly debated pertained to whether or not the writing was "other authentic matter of a public nature or character" encompassed by the legislative intent and import of the designated statutory language of N.J.S. 2A:109-1. The question obviously turns on an axis of statutory construction.
First, we observe that the writing has an authoritative countenance and physical aspect. It purports to originate *276 from the "Board of Health and Vital Statistics" of Hudson County, New Jersey. Its formalities reflect a certification of a birth recording contained in the official memorials of that office attested by the signature of the registrar acting in his public capacity. True, it was not genuine. Its declarations were false, and it was not officially issued. Hence, it is proposed that it could not be "authentic matter."
Assuredly it is the corrupt and fraudulent ungenuine and officially unauthorized imitation of matter of a public nature having the characteristics of authenticity that inheres in the offense contemplated and condemned by the statute.
It is also of pertinent significance to add that although the issuance of such "Extracts" was not required or indicated by law, the registrar in the conduct of his official functions has pursued the practice of delivering them to applicants as duly authenticated certificates of the birth dates of the persons therein named, extracted from the public records of the county office of vital statistics. Certainly the information so imparted by the certificate was of a public nature, and the memorandum itself partook the characteristics of official authenticity in its relation to the public records therein purportedly specified.
We are of the opinion that this document, prepared and utilized by the Hudson County Board of Health and Vital Statistics, bearing the facsimile signature of the registrar and normally issued with the signature of the certifying clerk and the impress of a seal, was an "authentic matter of a public nature or character" although "other" than a public record, for the fraudulent falsification of which the guilty person violated N.J.S. 2A:109-1.
There are some additional points introduced to us by circumspect counsel for consideration. Our attention is invited to the omission in the composition of indictment No. 474 of the name of the person intended by the defendants to be defrauded. This criticism of the indictment seems to experience its inaugural interposition in this appeal. Our legislative history on this subject includes a declaration of practice and policy in this particular in Gen. Stat. p. 1130, *277 Rev. 1877, p. 276. See Rohr v. State, 60 N.J.L. 576 (E. & A. 1897); L. 1898, c. 237; 2 Comp. Stat. 1834; R.S. 2:188-17.
True, R.S. 2:188-17 was not incorporated in Title 2A, there to have expressly surviving efficacy in the allegation and proof of a violation of N.J.S. 2A:109-1.
It was probably swept from the commendable revision of our accumulated statutory enactments because our constitutional innovations transplanted the subsistence of regulatory and directive measures of a procedural character to the field of the rule-making authority of the Supreme Court. We are not aware of any promulgated rule that revolutionizes and transforms the preexisting practice and procedure. The indictment No. 474 alleged that the defendants indulged in the unlawful activity with intent "to prejudice, injure, damage and defraud." Vide, State v. Longo, 132 N.J.L. 515, 519 (Sup. Ct. 1945), affirmed 133 N.J.L. 301 (E. & A. 1945).
Except to reveal the circumspection applied to the record by the diligent representatives of the defendants, the point is not one to which we can ascribe the proposed significance of a vital imperfection in the indictment or supporting evidence.
And, then, with an earnestness of advocacy we are entreated to reflect upon the following isolated excerpt taken from the concluding portion of the court's charge to the jury:
"Now there are two indictments as I said at the outset. Indictments 473 of the 1953 Term, you are only to be concerned with the Second Count of that indictment. Then, of course, your verdict will be that these two defendants, or either one, are guilty, and then on this other indictment, 474. So that your verdicts will be separate and distinct as to each defendant and as to each indictment. I think you follow what I mean. It would either be Francis Joseph McLaughlin is innocent, not guilty of the Second Count of 473, Francis Joseph McLaughlin is not guilty of 474; or reverse it. He is guilty of both or not guilty of anything. The same thing would apply to Harry Downes. So that your verdicts will be in that form. I believe you understand what I mean. You will have these in the jury room with you."
*278 The pressure of the remonstrance is concentrated upon the court's assertion that "He is guilty of both or not guilty of anything. The same thing would apply to Harry Downes. So that your verdicts will be in that form."
The passages last quoted were manifestly faulty and legally incorrect, but we have paused to cogitate their influential and perverting tendencies in their contextual setting in consideration of the structure of the entire charge and in relation to the stability of the conviction under indictment No. 474.
It is said that the particular directions were advantageous to the defendants in that they inevitably placed upon the prosecution the imperative burden of adequately proving the perpetration by the defendants of both of the independently alleged offenses; otherwise their acquittal of both was legally required. Suppose the jurors were solidly convinced of the guilt of the defendants of the one and reasonably doubtful of it in respect to the other offense. Pragmatically, would the doubt prevail, resulting in a complete exoneration of the defendants, or would the doubt succumb, resulting in a blanket conviction?
Our predominant concern is attached to the influential effect the error rationally could have had upon the minds of the jury and to the probability of prejudice, if any, thereby visited upon the substantial rights of the defendants.
We have undertaken to demonstrate that in the circumstances of the present case the two statutory violations of which the defendants were accused, as well as the factual elements thereof, were distinguishable, and their respective penalties are different in severity. Here, the requisite proof of either would not necessarily establish the essentials of the other.
Manifestly the instructions in their entirety actually transported to the jury contradictory concepts of their deliberative and decisional functions. It is elementary that a jury cannot be expected dutifully to determine what part of a contradictory charge is correct. Where the liberty of an accused is in jeopardy, it is too speculative for us judicially *279 to determine the sense in which the jurors comprehended and acted upon the ambiguous instructions. State v. Wynn, 21 N.J. 264 (1956).
The preservation of the fundamental right of every accused to a fair and just trial surrounded by the substantive and procedural safeguards against prejudicial error reasonably apprehended is of supreme importance in our administration of the criminal law. State v. Orecchio, 16 N.J. 125, 129 (1954).
It is only because of this misleading and concluding instruction which in our opinion assumed the proportions of "plain error" that we are constrained to reverse the judgment of conviction under the indictment alleging a violation of N.J.S. 2A:109-1.
The convictions under review are reversed.