76 N.J. Super. 396 (1962)
184 A.2d 748
A. JEROME MOORE, REGINA H. MEREDITH, ANTON J. HOLLENDONNER, JOSEPHINE A. MATHEY AND NANCY SCHLUTER, APPELLANTS,
v.
THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MERCER, ET AL., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 9, 1962.
Decided October 9, 1962.
*397 Before Judges GOLDMANN, FREUND and FOLEY.
*398 Mr. Edward B. Meredith argued the cause for appellants.
Mr. Joseph S. Bash, County Counsel, argued the cause for respondents.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs brought an action in the Chancery Division for a declaratory judgment and injunctive relief. Summary judgment was entered in defendants' favor, and this appeal ensued.
Following oral argument and after conferring, we delivered a brief oral opinion reversing the judgment and announced that a more formal opinion would follow. In view of defendants' intention to appeal our decision and obtain a stay pending appeal, we detail our views for the information of the parties and the Supreme Court.

I.
Plaintiffs are residents and taxpayers of Mercer County and bring this action on behalf of themselves and all others similarly situated. Moore is chairman of the Mercer County Republican Committee. Mrs. Meredith and Hollendonner are Republican candidates for the office of freeholder.
Defendant Sutch is a member of the Mercer County Board of Chosen Freeholders (hereinafter "Board") and Chairman of Revenue and Finance. Defendant Hillman is County Treasurer. Defendant Carroll is Clerk of the Board and, in addition, Supervisor of Purchases and Secretary-Treasurer of the Mercer County Mosquito Commission. Defendant Sypek, director of the Board and its presiding officer, is a Democratic candidate for re-election. Defendant Coffee is a Board member and Chairman of Public Works and Buildings; he, too, is a Democratic candidate for re-election. Defendant Sharkey is County Auditor.
The complaint alleges that all the members of the Board, as well as the incumbents of all other elected county offices *399 and their appointed deputies, are registered Democrats. During 1960 Moore, Mrs. Meredith and Hollendonner undertook to inquire into and investigate the financial, business and other records of the county maintained by the elected or appointed officials, and in this connection undertook to copy records pertinent to their inquiry. Plaintiffs allege that in attempting to copy bookkeeping cards, original bills, vouchers, checks and other financial and business records described in the complaint, they were in many instances subjected to arbitrary and unreasonable treatment during 1961 and 1962.
The complaint alleges that despite the limited evidence obtainable from the records, Mrs. Meredith and Hollendonner nevertheless appeared at public meetings of the Board from time to time and brought to its attention, and to the attention of the public generally, various expenditures, methods and aspects of county government which they believed warranted public discussion and official action. They claim they were severely handicapped in doing this by reason of the refusal of certain of the defendants to furnish duplicate copies of the original records and because of the almost impossible task of hand-copying such records as were made available. The complaint goes on to state that as a result of such evidence as could be gotten from the records, Mrs. Meredith appeared before the grand jury in connection with certain alleged illegal activities of the former undersheriff. The grand jury subsequently indicted him and filed a presentment dealing with subjects brought to its attention by Mrs. Meredith.
Mrs. Meredith and Hollendonner claim that their review of records maintained in the County Treasurer's office disclosed various illegal expenditures in recent years, improper purchasing methods, misleading and erroneous methods of account, and other irregular methods and practices. The complaint states that in order to pursue further the evidence thus uncovered and to determine and expose the full extent of alleged "misfeasance and malfeasance" reflected in the *400 business and financial records of the county, plaintiffs Moore, Meredith and Hollendonner purchased a portable photocopying machine (name and style number stated in the complaint) which, they claim, could instantly reproduce records without possibility of damage or impairment. Early in February 1962 Mrs. Meredith advised the County Treasurer's office that two volunteers  plaintiffs Mathey and Schluter  would come to the office to copy certain public records maintained there. She was advised that the volunteers would be welcome and that they might study and copy the records requested. The complaint alleges that when they arrived at the office with the photocopying machine, defendant Sutch told them they could not use the equipment because such use would be illegal. The several plaintiffs then appeared before the Board to obtain permission to photocopy the records in question, only to be referred back to Freeholder Sutch. He again denied them permission to photocopy. An appeal by plaintiff Moore to defendant Sypek, director of the Board, brought a reply from Sutch that the records were public and available for inspection under reasonable circumstances; he would not, however, turn them over to persons not regularly employed by the county, but offered to secure cost figures covering his duplicating of the records.
It is unnecessary to detail further the allegations of the complaint. Plaintiffs state their intention as being to search, review, correlate and carefully study the requested records for the purpose of (a) bringing to the attention of the Freeholder Board, in public meetings, any existing irregularities as well as such suggestions as their investigation would disclose; (b) to inform the public of Mercer County as to these matters; (c) to present to the grand jury, without delay, any matters involving criminality which their investigation might disclose, and (d) to gather data and legal evidence sufficient to permit plaintiffs and others to take appropriate steps to secure the return to the county of such monies as may have been or are being illegally or corruptly expended.
*401 In the first count of the complaint plaintiffs ask that defendants be directed to make available, at such time as may be fixed by the court, the bookkeeping cards specifically described and covering the years 1956 to 1962, inclusive; that defendants be directed to provide a suitable space to permit plaintiffs or those acting on their behalf to photograph the records, defendants to be present at all times when photocopying was in progress; that defendants be ordered to make available such other records described in the complaint as might from time to time be designated by plaintiffs  on the same terms and conditions; and that the Chancery Division assume continuing jurisdiction after the entry of an appropriate order, so as to eliminate possible delay and harassment.
By the second count of their complaint, plaintiffs ask the court to declare their right to photocopy designated public records of the county by means of the equipment described, during normal business hours. They also pray that the court enter an order requiring defendants to accord such rights to plaintiffs, upon such terms as the court deems proper.
Soon after the filing of the complaint defendants moved to dismiss for failure to state a claim upon which relief can be granted; for judgment dismissing the complaint as to defendants Freeholder Board, Coffee, Sypek and Sharkey, because they were neither proper nor necessary parties; for judgment of dismissal because the filing of the complaint was politically motivated; and for an order striking certain paragraphs as immaterial, redundant, impertinent and scandalous. While the motion was pending Mrs. Meredith filed an affidavit stating that on June 19, 1962 she had tried to obtain a copy of the grand jury presentment handed up in January 1962 and had experienced delay and difficulty at the hands of specifically named county offices and officials before being permitted to see a copy. The affidavit further states that she was denied the right to see an insurance survey that had been made in September 1961 at the request of the freeholder in charge of such matters.
*402 The motion to dismiss came on for hearing and was denied by the assignment judge for Mercer County on June 29, 1962. The transcript of the hearing indicates that he considered the motion as prematurely brought, and suggested that an answer first be filed. This was done. The answer denies most of the allegations of the complaint.
Defendants then gave plaintiffs' attorney notice of a motion for summary judgment, returnable July 26, 1962. Attached was an affidavit of defendant Sutch stating that Mrs. Meredith, as alleged in the complaint, had early in February 1962 called at the County Treasurer's office to advise that volunteers would be down later in the day to copy certain records; that plaintiffs Mathey and Schluter appeared with equipment to photocopy the records, and that he had refused them permission to do so.
At the same time that the motion for summary judgment was filed, defendants obtained an order staying all proceedings (particularly the taking of defendant Sharkey's deposition) pending disposition of the motion  this without notice to plaintiffs or their attorney. Plaintiffs at once sought to have the order vacated. They were unsuccessful.
At the time of the hearing on the motion for summary judgment, the county judge then sitting in the Chancery Division because of the summer vacation schedule had before him an additional affidavit by Mrs. Meredith in which she stated that the allegations set out in the complaint, except for certain designated paragraphs, were personally known to her and true to the best of her knowledge; and as to the conclusions therein contained, she believed they represented a fair inference based upon her personal inspection of such county records as she was permitted to see. The affidavit goes on to say that in order to obtain a full understanding of the records maintained by the several defendants, it was necessary to photocopy such of them as might be designated. Further, by reason of the uncooperative attitude and constant delaying tactics on the part of several of the defendants, it was necessary that plaintiffs' inspection and copying of the *403 designated records be supervised by a judge. The affidavit also stated that it was plaintiffs' present ultimate intent, after copying and reviewing the designated records, to seek an investigation of the county's affairs pursuant to N.J.S. 40A:5-22.
Following a hearing, the trial judge entered the summary judgment here under review. His supporting opinion appears in Moore v. Board of Chosen Freeholders of Mercer County, 76 N.J. Super. 42 (Ch. Div. 1962). He held that plaintiffs had no present statutory right to photocopy public records, and referred to Evening Journal Ass'n v. MacPhail, 45 N.J. Super. 184 (Law Div. 1957), as pointing to a denial of plaintiffs' claim.

II.
Plaintiffs argue that the order denying defendants' motion to dismiss was res judicata of the issues (claimed to be identical) raised in the subsequent motion for summary judgment. Our review of the transcript of the hearing before the assignment judge who denied the motion to dismiss demonstrates that this contention is without merit.
In view of our ultimate determination, we need not deal with plaintiffs' further argument that the ex parte order, entered without notice and barring discovery pending the motion for summary judgment, violated due process and was contrary to R.R. 4:55-1. Nor do we concern ourselves with whether summary judgment should have been granted in view of the pleadings and affidavits on file, and in which we perceive a factual conflict as to whether plaintiffs were actually denied access to the records they wanted to inspect. The entire matter resolves itself down to a single question: Do plaintiffs have the right to inspect and photocopy the records in question?
In their briefs and at oral argument defendants raised no question as to plaintiffs' interest and status. They conceded plaintiffs' right to inspect and hand-copy designated *404 records as long as their request was within reason and the inspection and copying took place during business hours and did not interfere with the regular course of county business. Defendants insist, however, that plaintiffs have no right to photocopy because no statute accords them that privilege. They refer to bills  Assembly No. 358 (1960), Assembly No. 536 (1961), and Assembly No. 560 (1962)  introduced in the Legislature in recent sessions, according to every New Jersey citizen the right, during regular business hours, to inspect public records and copy them manually or by any photographic device which would not damage the records. The proposed legislation would except certain records. Defendants argue that the failure of the Legislature to pass any of these bills indicates a reluctance on its part to accord citizens the right to photocopy. We decline to attribute any such attitude to the Legislature. Defendants' conclusion can be nothing more than conjecture. Many other reasons for legislative inaction readily suggest themselves.
We start with the proposition, axiomatic in any democratically constituted society, that the public business is indeed the public's business. The people have the right to know. As one writer has succinctly and accurately stated the basic principle involved:
"It is not enough merely to recognize philosophically or to pay lip service to the important political justification for freedom of information. It is not enough that by virtue of official grace and incentives some information, even in large aggregate volume, does somehow become available. It is not enough that, thanks to the industry and resourcefulness of newsmen, information of governmental activity becomes available to the people speedily, in volume and at low cost.
Citizens of a self-governing society must have the legal right to examine and investigate the conduct of its affairs, subject only to those limitations imposed by the most urgent public necessity. To that end they must have the right to simple, speedy enforcement procedure geared to cope with the dynamic expansion of government activity.
These rights must be elevated to a position of the highest sanction if the people are to enter into full enjoyment of their right to know. Freedom of information is the very foundation for all those freedoms that the First Amendment of our Constitution was intended to *405 guarantee." (Cross, The People's Right to Know (1953), pages xiii-xiv)
Reference to the many decisions upholding the right to inspection and copying of public records as a matter of statutory right is both inappropriate and unnecessary. New Jersey accords that right to properly qualified persons as a matter of common law. Ferry v. Williams, 41 N.J.L. 332 (Sup. Ct. 1879), where the English cases are reviewed; Taxpayers' Ass'n of Cape May v. City of Cape May, 2 N.J. Super. 27 (App. Div. 1949), where Judge (now Justice) Jacobs reviewed the cases decided since Ferry.
The Cape May case was an appeal from a Law Division judgment which directed that defendants permit plaintiffs to examine the public records of the city, subject to reasonable restrictions for their safety and the avoidance of any interference with the transaction of the public business. On appeal the Cape May defendants acknowledged that plaintiffs' claim for inspection had been confined to public records and that there had been no interference with the normal course of the public business or with the safety of the records. However, they urged that plaintiffs had no right to a general inspection of the city's public records. Judge Jacobs held:
"Although we believe that in furtherance of good government the right of interested citizens and taxpayers to inspect public records should be broadly recognized, we need not here attempt to define its precise scope and limits. We are satisfied that under the special circumstances presented the interest of the taxpayers and citizens is sufficient to sustain their application. Their motives are good; they are vitally concerned with the threatened tax increase and are seeking information which may support demands for increased governmental efficiency and affirmative action for the elimination of any existing official abuses; they have incurred considerable expense and have completed a substantial part of their inspection; they will not endanger the safety of the records or interfere with the public business; and they will confine themselves to an examination of documents which are admittedly public records. The public policy in favor of their position is strong and no counterbalancing considerations have been advanced by the defendants. Indeed, their sole contention is that recognition of a taxpayer's right to a general inspection might result *406 in a flood of proceedings which will hamper the conduct of the public business. This, however, is readily met by the power of the trial judge to impose appropriate restrictions as was done here and, indeed, by his wide discretion to deny all relief either in the public interest (Beronio v. Pension Commission of Hoboken, 130 N.J.L. 620, 624 (E. & A. 1943)) or because of the plaintiff's bad motives (In Re Freeman, 75 N.J.L. 329 (Sup. Ct. 1907)) or for other just cause. * * *" (2 N.J. Super., at pages 31-32)
And see the opinion of Judge (now U.S. Associate Justice) Brennan in Casey v. MacPhail, 2 N.J. Super. 619 (Law Div. 1949).
Plaintiffs are clearly entitled to inspect and copy the particular records they have designated. Their complaint demonstrates a legitimate interest, not only in their own right as residents and taxpayers of the county, but in the interest of the Mercer County public at large. In this respect, they are like the plaintiffs in the Cape May case. The fact that two of the plaintiffs are Republican candidates for election to the Freeholder Board is of no moment. Casey v. MacPhail, above.
Evening Journal Ass'n v. MacPhail, 45 N.J. Super. 184 (Law Div. 1957), on which defendants rely, is distinguishable. Insofar as it may be considered as limiting the views herein expressed, we do not choose to follow it since it adopted too narrow a view of the right to inspect and copy public records.
Defendants do not contend that the records in which plaintiffs are interested are not public records. For almost 150 years New Jersey had no general statute defining public records. Finally, the Legislature provided a definition in L. 1924, c. 135, § 1, a supplement to the act establishing a state public record office, L. 1920, c. 46. The 1924 act was repealed by L. 1953, c. 410, § 17. The 1953 act, N.J.S.A. 47:3-15 et seq., known as the Destruction of Public Records Law (1953), defined "public records," as used in the act, as
"* * * any paper, written or printed book, document or drawing, map or plan, photograph, microfilm, sound-recording or similar device, *407 or any copy thereof which has been made or is required by law to be received for filing, indexing, or reproducing by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received by any such officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, in connection with the transaction of public business and has been retained by such recipient or its successor as evidence of its activities or because of the information contained therein." (N.J.S.A. 47:3-16)
Although the quoted definition does not appear in an act dealing generally with the inspection and copying of public records, it suffices as an authoritative legislative guide to what may or may not be considered to be a public record. The records which claim plaintiffs' interest clearly qualify as public records. In this connection, see Ferry v. Williams, Taxpayers' Ass'n of Cape May v. City of Cape May (and New Jersey cases reviewed), Casey v. MacPhail, above. See also Tagliabue v. North Bergen Tp., 9 N.J. 32 (1952); cf. Stack v. Borelli, 3 N.J. Super. 546 (Law Div. 1949).
(For a study of individual statutory provisions dealing with specific types of records, see Young, Public Records in New Jersey (Rutgers University 1955)).
As we read the complaint, and as brought out in the briefs and oral argument, plaintiffs have not insisted that they have the right to inspect and copy any and every county record. Were theirs an unlimited, scatter-gun approach, we might very well limit them to specific records. However, their demand is not general; they have specified exactly what records they wish to examine, and for what purpose.
We are not to be considered as holding that every county record, no matter what its nature, may be inspected by a person who, like plaintiffs, has good motives and a proper concern with the public business, for the good of the county as a whole. For example, confidential records, records developed by the prosecutor's office in the course of investigating criminal activity, records which, if disclosed, would be detrimental to the public interest, should not be *408 open to inspection. The records in which plaintiffs are interested are not of that character.
No argument is made that the records which plaintiffs called for were or are being sought outside of business hours. Nor do defendants contend that plaintiffs' inspection and copying will interfere with the conduct of the public business.
We come, then, to the core question of whether the common law right which persons like plaintiffs have, to inspect and copy public records, is limited to hand-copying. Plaintiffs seek to photocopy by the use of modern and tested equipment, portable and compact, and well known in the public market. To ignore the efficacy and practical worth of such equipment, and to compel plaintiffs to resort to laborious and time-consuming hand-copying, would substantially impair their right to inspect and copy.
To prohibit photocopying with proper equipment is to ignore the significant progress which our generation has witnessed. Photocopying is an everyday procedure in business and professional offices, large and small. Plaintiffs cannot be restricted to the use of pen, pencil and pad. Were we to accept the reason defendants advance for denying the right to photocopy, then it might well be said that a records custodian in some past day could, with equal justification, have insisted that the interested citizen use quill instead of pen, or pen instead of typewriter.
The only limitations upon the use of photocopying equipment must be that such equipment does not occupy an unreasonable amount of working space or unreasonably interfere with the regular routine of the office involved, and that its performance be such as not to damage or impair the physical records themselves or their contents.

III.
In summary, we hold that plaintiffs have the interest and status entitling them to inspect and copy the public *409 records they seek. They must in each instance, and from time to time, specifically designate (as they do now) the records they desire. The copying must be done within business hours and without interfering with the routine of the office. They may use portable photocopy equipment which will not impair the records. The county should provide accommodations and facilities reasonably necessary to plaintiffs' purpose.
To insure that plaintiffs will not be hindered or delayed in any proper request they may make, and to resolve any possible difference of opinion which may arise between them and defendants, continuing supervision of the matter is hereby delegated to the assignment judge for Mercer County.
The summary judgment is reversed and the supervision of plaintiffs' inspection and photocopying referred to the assignment judge for the resolution of such problems as may arise from time to time.