In the Matter of the Final Judicial Settlement of the Account of Proceedings of Charles Haines, as Executor of the Last Will and Testament of Robert Van Tassell, Deceased.

Surrogate's Court, Westchester County, October, 1922.

Wills — construction — bequests to children with directions to executor to deduct amounts owed by legatees to testator regardless of the Statute of Limitations — when amount of notes barred by Statute of Limitations is properly deducted with interest from share of son.

A testator gave the use and income of all his real property to his daughter for life with direction that upon her death his executor should convert the real property into money and make an equal division thereof among three of testator's children and the descendants of a deceased child. The proceeds of the sale with any personal property were to " be divided into four equal parts." The executor

was also directed to " deduct from each of said legacies the amount which each legatee may owe me at my death, whether the same is barred by the statute of limitations or not, which said indebtedness is to be considered by my executor upon the distribution of my estate under this will as forming a part thereof and charged against the legatee in the distribution among the same." Upon the death of the life tenant the real property was sold. *Held*, that the deduction by the executor from the share in the estate, of a son of the testator, of the amount of promissory notes made and given by the son to his father nearly thirty years before the will was made, together with interest thereon from their dates to the date of testator's death, was proper.

The testator used the words " statute of limitations " as a standard, and to give them the force of equality it must be held that at the date of his will the testator meant to limit the gift to said son by deducting therefrom the principal of the notes and interest due thereon, the running of any law of limitations as a defense to the contrary notwithstanding.

PROCEEDING for settlement of accounts.

*Charles Haines*, executor in person.

*Irene Bennett Adams*, for Theodore Van Tassell.

*Carroll Sprigg*, objector in person.

SLATER, S. In 1881 the testator's son Theodore became indebted to him by virtue of two certain notes, one for $150, payable one year after date with interest, and the other for $1,000, with interest and without a due date. The common law relating to notes applies. Both are demand notes and carry interest from their dates. The smaller one was negotiable, the other was non-negotiable at its date. The transaction was not an advancement, a gift which does not carry interest, but an every-day loan of money. No evidence was offered, save the notes themselves. They contain no indorsement of interest payments thereon. In 1905 the testator made his will, and died in 1910. By the 1st paragraph of the will the use and income of all real property was given to a daughter during her lifetime, and by the 2d paragraph of the will upon the death of the daughter the executor was directed to sell the real estate, convert it into money and make an equal division thereof among three children and the descendants of a deceased child. By the language of the will the proceeds of sale with any personal property were to " be divided into four equal parts." The testator said: " My said executor is to deduct from each of said legacies the amount which each legatee may owe me at my death, whether the same is barred by the statute of limitations or not, which said indebtedness is to be considered by my executor upon the distribution of my estate under this will as forming a part thereof and charged against the legatee in the distribution among the same." The life tenant is dead; the real

property has been sold, and the executor has now reached the stage of final accounting. He has deducted the amount of the two notes and interest thereon from their dates to the date of the death of the testator. The son, Theodore Van Tassell, the maker of the notes, protests against the scheme of the account and in any event contends that the interest should not be deducted.

The testator by his will says that there shall be deducted from each legatee's share the amount they "*may owe me at my death.*" If he had stopped with these words, there would be nothing owing to the testator to be deducted under the doctrine of *Kimball* v. *Scribner*, 174 App. Div. 845; *Matter of Flint*, 118 Misc. Rep. 354. But the testator goes farther and provides that, even though the Statute of Limitations has run as a bar, it must be cast aside and the indebtedness charged against the legatee. In law we have the defenses of the Statute of Limitations (Code Civ. Pro. § 382, now Civ. Prac. Act, § 48) relating to debts of this character, and independently of statute we have the principle of the common law known as the presumption of payment arising from lapse of time. The will was made after the Statute of Limitations had run, and also after the debt had become stale under the principle of the presumption of payment. An action at law to enforce the debt would have been met by these two defenses, the six-year Statute of Limitations and the presumption of payment. Code Civ. Pro. § 382; *Bean* v. *Tonnele*, 94 N. Y. 381, 386; *Matter of Lewis*, 190 App. Div. 891; 2 Pars. Notes & Bills, 254. Consequently, we must endeavor to ascertain what the testator meant when he wrote into his will the words "barred by Statute of Limitations or not." In the construction of a will the court seeks the intent of the testator as expressed by the words he has selected. The legal maxim is that "words ought to be made subservient to the intent, not contrary to it." Presumption of payment after twenty years renders the cause of action non-existent. The common-law rule that a presumption of payment of a judgment, bond or other specialty arose from the lapse of twenty years from the time it became due in the absence of circumstances explaining the delay, was adopted from the rule of courts of equity. It existed in this state prior to any statutory provision on the subject. *Brinkman* v. *Cram*, 175 App. Div. 372. In *Gray* v. *Seeber*, 53 Hun, 611, the court, in speaking of section 376, which wrote into the Code the law of presumption applying to judgments, said: "It is said there is a clear distinction between a presumption of payment and a statute of limitation. As an abstract proposition, that statement may perhaps be correct. It is doubtless true, that there may be presumptions of payment which are not statutes of limitation, but it does

not follow that a presumption of payment created by statute may not constitute a statutory limitation." This statute of presumption as found in section 376, Judge Andrews in *Fisher* v. *Mayer*, 67 N. Y. 73, 79, speaks of as a statute of limitations, as does Judge Earl in *Diefenbach* v. *Roch*, 21 N. Y. St. Repr. 573. The court further said (*Gray* v. *Seeber*, 53 Hun, 611): "Without multiplying instances where this and similar statutes had been spoken of and treated as statutes of limitation, we think it may be safely said the general, if not universal, understanding of the profession, as well as of laymen, is, and has been, that such a statute is a statute of limitation and is generally spoken of and designated as such."

A statute of limitations alters the common law by introducing limitations to the right of actions in mentioned cases. It is a statute assigning a certain time after which rights cannot be enforced by action. The word "limitation" in its ordinary legal and popular sense refers to the time within which an action may be brought for some act done to preserve a right. "Limitations" and "laches" are not synonymous in legal terms. "Limitations" signify that fixed statutory period, while "laches" signify delay independent of statute.

A statute is an act of the legislature of the state declaring, commanding or proh'biting something. It is a positive law. Presumption is the strong probability — reasonable supposition. The word "statute" in its broadest sense may be construed as meaning regulation, rule, law, legal process, equity, common law.

In *Matter of Bump*, 234 N. Y. 60, the court had to guess somewhat as to the intention of the testator. The will contained no words to assist in arriving at the testator's intention. Here we clearly have the testator's desire to limit the legacy. The question is: "What did he mean by the words 'statute of limitations?'" Did he intend to have deducted from the legacy the debt owing him, notwithstanding the running of the six-year Statute of Limitations only, or did he also intend to deduct the debt notwithstanding the running of the twenty-year law of presumption of payment? It seems reasonably clear that he understood that the debt was barred, that he could not proceed in a court of law to enforce its collection. And he did what he had a right to do, limit the legacy to his children by deducting from their equal share what was owing to him, by disregarding the bar of the law of limitations. The court believes he intended to cast aside any limitation of the law, statute or common. When he wrote the words "statute of limitations" he meant the law of limitations.

31

He intended to limit his gift by deducting therefrom all debts owing him as though there had never been such an institution as legal limitations. He wanted to do equality among his heirs; he says so. The son had the amount of money named in the notes, had never paid interest thereon, had the use of the interest all the years, had never repaid the amount borrowed. The testator in effect said: " To make an equal division of my estate among my children, that which is owing me must be treated as an asset of my estate, and be deducted from the share of each legatee's indebtedness to me." The fact that the six-year Statute of Limitations had run, and likewise the twenty-year law of presumption of payment had run at the date when the testator made his will is a vital factor as to the testator's real intention. For him to speak of the Statute of Limitations as meaning only the Code provision would have rendered his words of deduction absolutely meaningless. There was still another defense to be wiped away to make for equality of division of his estate. In *Matter of Buechner*, 226 N. Y. 440, the court says: " Words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent or significant." If, after six years had elapsed from the date of the notes, and before the law of presumption of payment had run, he had made such a will, a different case might be presented.

It is my opinion that he used the words " statute of limitations " as a standard. The rule of presumption of payment is a limitation upon the right of the testator to institute some proceeding to enforce payment of his debt. In general, any period of time which bars a claim is spoken of as a statute, or law of limitations. Consequently, to give force to his words of equality, it must be held that at the date of his will, twenty-eight years after the notes were made and given, he meant to limit his gift by deducting the principal and interest due thereon, the running of any law of limitations, as a defense, to the contrary notwithstanding. I cannot believe that the testator chose deliberately to create a bar of the six-year period and to exclude the bar of the twenty-year presumption of payment. The executor's contention is right that the testator intended to deduct from Theodore's share the amount of principal and interest due him at death, disregarding any and all defenses in law or equity.

Another contention arises upon this accounting. The children of a deceased child of the testator assigned their interest to one Horace G. Arnold on November 16, 1910, by a paper writing which upon its face is a complete transfer of their interest in the estate of their deceased grandfather. By another instrument, however,

executed upon the same day and made part of the same transaction, Arnold agreed that the assignment was held by him as security for the payment of a bond and mortgage for $4,000, made by the grandchildren to said Arnold upon certain real property in the county of Rockland, and also upon the real estate of their grandparent in Westchester county. The bond and mortgage was offered in evidence, and the papers in the subsequent foreclosure action. During the pendency of the foreclosure action, the grandchildren made a further assignment of their interest to Carroll Sprigg, their attorney, to secure $500. Mr. Sprigg admits this assignment was only made to secure him in such an amount as may be due up to $500. Mr. Sprigg appeared for the grandchildren in the action and the counsel of all the parties later entered into a stipulation which Mr. Sprigg now contends changed the original assignment of interest entered into between the grandchildren and Arnold. It may be recalled that the will created a life estate for a daughter, and directed that the executor upon her death should convert the real estate into money and to divide the proceeds. The grandchildren and the other legatees were excluded under the doctrine of equitable conversion from taking the land and were only entitled to receive the proceeds of sale. The stipulation discontinued the action against the real property in Westchester county; agreed to the foreclosure and sale of the Rockland county property subsequent to a certain date; provided further that if enough money was not obtained upon said foreclosure sale the plaintiff should have the right to begin an action to again foreclose the real property in Westchester county, and provided further that in the event of a sale of the real property by the executors of the testator, under the power of sale, any balance then due Arnold was to be deducted from the share of the two grandchildren. It is now contended by Mr. Sprigg, the second assignee, that under the law of novation the stipulation changed the original agreement, *i. e.*, the assignment of their interest in their grandfather's estate as collateral security to Arnold. The mortgage upon the real property in Westchester county was without force because the grandchildren had no interest in the real property which was subject to a mortgage. Their interest was in its avails. All the owners of the proceeds of sale had not elected to take the land in place of the avails thereof. There was an equitable conversion. Therefore, the stipulation in respect to the Westchester county real estate was like the mortgage upon the same property, ineffectual. I cannot see that the stipulation changed the relation of Arnold in any particular. The stipulation was not a substitution for the old contract. No old contract was

extinguished, or changed. I shall decide that $932.77 is the amount due Arnold, and is a valid prior lien to the amount due Mr. Sprigg, the second assignee of the grandchildren; that the assignment to Sprigg is collateral security only to the extent of $300 as claimed by him for various legal services, which being an unliquidated claim, cannot bear interest except from this date.

Decreed accordingly.