In the Matter of CHARLES L. YOUNG et al., Doing Business as ROOSEVELT CHEVROLET COMPANY, Petitioners, against LAW-RENCE GEROSA, as Comptroller of the City of New York, Respondent.

First Department, June 21, 1960.

*Howard F. Ordman* of counsel (*Lemuel Skidmore* with him on the brief; *Putney, Twombly, Hall & Skidmore*, attorneys), for petitioners.

*Morris L. Heath* of counsel (*Stanley Buchsbaum* and *Charles M. Fox* with him on the brief; *Charles H. Tenney, Corporation Counsel*, attorney), for respondent.

STEVENS, J. This is a proceeding to review a final determination of respondent after a statutory hearing, which assessed petitioner with general business tax deficiencies for three privilege years ending June 30, 1954, June 30, 1955 and June 30, 1956, respectively. The proceedings were transferred to this court on consent, pursuant to order of Special Term (Civ. Prac. Act, § 1296).

The petitioner is a partnership engaged in the business of selling and servicing new Chevrolet automobiles at retail and of selling and servicing used automobiles of various manufacture.

In the course of its operation and in accordance with the general practice of dealers similarly engaged, petitioner from time to time, when a particular model or combination of vehicle was desired which it did not have in stock, would obtain the desired model from another dealer. This would be accomplished by giving in exchange a model which it had in its inventory in order to supply its customer with the car demanded. Where the exchanges were of units of equal wholesale or factory invoice price no tax was imposed. When there was a difference in the factory invoice price in the cars exchanged the difference was paid in cash. Sometimes petitioner paid and sometimes it received such difference.

When an exchange occurred in which some cash payment was made, respondent treated it as an outright sale and imposed a full tax on both parties. The tax included both the wholesale car value and the cash surplus.

One of the issues before us is the contention of the petitioner that the exchange of new vehicles between dealers, when some cash is paid, does not produce taxable receipts as that term is used in the statute and in the code.

Petitioner points out that there are so many combinations or variables of cars that no one dealer could maintain an inventory to supply every demand. Not infrequently exchanges are made between several dealers before the model desired for the customer is obtained.

A second question arises where retail sales of new cars are made and used cars are accepted as a trade-in and as a part of the purchase price. The question in such cases is whether the taxable receipt is the sale price stated in the bill of sale, or whether the taxable receipt, that is, the sale price, should be reduced by the difference in value of the used car as appraised by the dealer and the amount that he credited the buyer.

The third question arises when a used car received as a trade-in is sold thereafter. Respondent treats the amount received as a taxable receipt. The contention of petitioner is that it is double taxation to tax the full sale price received when a used car is traded in as part of the purchase price of a new car, and to treat as a taxable receipt the amount received by the dealer on a subsequent sale of the used car.

The relevant portion of the Business Tax Law is found in section B46-2.0 of the Administrative Code of the City of New

York and in section 24-a of the General City Law. Both provide in part as follows:

"a. For the privilege of carrying on or exercising for gain or profit within the city any trade, business, profession, vocation or commercial activity * * * or of making sales within such city * * * every person shall pay an excise tax * * * upon all receipts received in and/or allocable to the city from such profession, vocation, trade, business or commercial activity exercised or carried on by him during each calendar year * * *.

"3. 'Receipts.' The gross receipts received in, or by reason of any sale made or services rendered or commercial or business transaction had in the city, including cash, credits and property of any kind or nature, without any deduction therefrom on account of the cost of the property sold, the cost of materials used, labor or service or other cost, interest or discount paid, or any other expense whatsoever".

Under the provisions cited the Comptroller issued the following regulation:

### Property Traded In.

"Article 216. Whenever tangible personal property of any kind is sold and allowance is made for other tangible personal property which is traded in and is accepted by the vendor in part payment of the property sold, the allowance made for the property traded in shall not be deducted from the selling price of the property sold in computing gross receipts upon which a tax is imposed. The vendor must include in the measure of the tax the full selling price of the property sold without any deduction therefrom for any allowance made on property traded in. Where the property traded in is subsequently sold by the vendor, the latter must include in his gross receipts the total selling price from the sale of such property.

"Where dealers engaged in similar lines of business exchange articles of tangible personal property and one of them makes payment to the other in addition to the property exchanged by him, the transactions constitute sales to each other. The receipt of each dealer is measured by the gross value of the consideration received by him. Where a dealer transfers property, such as an automobile, to another dealer with the understanding that property of identical description will be returned at a subsequent date, such transaction does not constitute a sale and the value of the property exchanged need not be included in the gross receipts tax base of either dealer." (N. Y. City Agencies Rules and Regulations [1946–1952 Supp.], p. 14.)

## Accommodation Transactions.

"Article 220. Receipts from accommodation sales or other transactions of an accommodation nature are subject to inclusion in the measure of the tax even though no profit may be realized from such transactions. However, where two persons engaged in the same type of business occasionally effect an exchange or loan of inventory or stock in trade, as in case of an emergency, the receipts from such transactions may be excluded from the measure of the tax provided:

"(1) That the transactions are casual and infrequent;

"(2) That the transactions are not entered into for profit; and

"(3) That the transactions are in the nature of loans for the purpose of meeting emergencies." (N. Y. City Agencies, Rules and Regulations, p. 89.)

As pointed out, when the exchange of cars between dealers is of exactly the same value no tax is imposed on either dealer. The question arises when a cash payment is made whether that single fact constitutes a reasonable basis for a determination that a tax be imposed on both dealers, on the total exchange value, including the car exchanged and the cash payment made. Is the character of the transaction so changed as to warrant the distinction?

Exchanges of cars between dealers with or without cash payments are essentially exchanges in kind for their mutual accommodation and are not primary sales for which the business is conducted. The objective is to facilitate a retail sale and when that is consummated, the revenue derived is fully taxed. The general connotation of the term "exchange" denotes "a commutation of property for property, i.e., the price or consideration is always paid in money if the transaction is a sale, but, if it is a barter or exchange, it is paid in specific property susceptible of valuation." (Black's Law Dictionary, 4th ed.) Generally a sale does not involve an exchange in kind, but a complete transfer of title or property in goods for a cash consideration called the price, though it must be recognized that the price may be made payable in personal property. (Personal Property Law, §§ 82, 90; 46 Am. Jur., Sales, § 10.)

The statute provides that every person is to pay an excise tax upon all gross receipts by reason of any sale made (General City Law, § 24-a, subd. 3). These are not words of special or technical meaning but are common words (*Matter of Steinbeck* v. *Gerosa*, 4 N Y 2d 302, 308). "Words of ordinary import are to be construed according to their ordinary and popular signifi-

cance '' (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 232) and a tax law should be interpreted as the ordinary person reading it would interpret it (*Saltser & Weinsier* v. *McGoldrick,* 295 N. Y. 499, 508).

'' The determination of what articles or transactions are taxable is a legislative function. * * * ' A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well founded doubt as to the meaning of the act defeats the tax'.'' (*Matter of Good Humor Corp.* v. *McGoldrick,* 289 N. Y. 452, 455, citing *People ex rel. Mutual Trust Co.* v. *Miller,* 177 N. Y. 51.)

To hold that every exchange between dealers looking to an ultimate retail sale is taxable in its entirety merely by reason of a cash payment in part, and this irrespective of the amount involved, when such exchange without a cash payment would be exempt from taxation in its entirety, is to sanction a distinction which has no valid basis in reason or in law. Neither dealer experiences any additional benefit or detriment, save in a rather nebulous sense, which that dealer does not experience when the exchange is made on even terms. The inventory is not increased, the possible sales to the consuming public are not multiplied, and the city has no more been deprived of income than when the exchange is made without a cash payment. No valid reason or competent proof appears in the record to support the distinction. The basis for exclusion, as well as for a denial of exemption, is found in the same statute, and grounded upon identical language.

The second paragraph of article 216, recognizes both transfers (i.e., with or without a cash payment) as exchanges and so designates them. It makes the mere addition of a cash payment between the principals because of a value differential sufficient to constitute a sale. No logical or sound basis warrants the different application. Since not infrequently multiple transfers are required before the model desired by the prospective purchaser is obtained, the repeated or multiple taxation resulting could become so expensive as to defeat the purpose of the act. That is, the source of the greater revenue, the hoped-for sale, may be choked at its mainspring and the sale abandoned.

Petitioner contends that where a trade-in is made as a part of the purchase price the taxable receipt should be reduced by the excess over the dealer's appraised value, rather than be fixed at the amount allowed in the bill of sale. This contention is without merit. This is a gross receipts tax and the sale price includes the value allowed. Ordinarily the amount agreed

upon between the parties and set forth in the contract of sale is controlling, for the bill of sale contains the items of the transaction (see *Engelhorn* v. *Reitlinger,* 122 N. Y. 76).

Such allowance or credit clearly falls within the definition of receipts (General City Law, § 24-a, subd. 3). Article 216, in providing that such allowance is not deductible, does no more than is expressly permitted by the statute.

The argument that such allowance is in effect a discount is not persuasive. This is in no sense a drawback or reduction of the purchase price and the bill of sale reflects that fact. The amount allowed is not constant, and the full amount, whatever it may be, is utilized in Federal and State tax computation. Reference to the other regulations fails to support petitioner's argument on this score.

As to the third point raised—having once taxed the full amount allowed for the used car, to tax the amount received on a resale of that car, if it be the same or less than the amount allowed, is "double taxation". That fact alone would not warrant its rejection. Nor would the fact that prior to the amendment of article 216, effective January 1, 1947, the amount received on a resale was excluded from the gross receipts tax be determinative. Though it might be noted that no change had been made in the enabling act or local law before the regulation, article 216, was revised.

The gross receipts tax is a revenue tax and the fact of double taxation, if we so consider it for purposes of this discussion, does not in and of itself render such tax illegal. It must be recognized that the basis or foundation for an excise tax is a reasonable classification of the subject of taxation and the Legislature has the power to so declare, as well as to delegate that power to a municipal corporation or the fiscal officer thereof.

The first consideration then is whether the resale of a used car under the circumstances here existing may be reasonably classified as a proper subject for taxation. Are all of the incidents of a sale present? Obviously they are. Does the nature of the article or the nature of the original transaction by which the subject matter was acquired preclude its consideration as a proper subject for excise taxation? Certainly there can be no question that where any excess is received over the amount allowed as trade-in value it represents a pecuniary gain and is taxable. The only question remaining is where there is a resale without gain, or even where there is a loss, is such resale taxable?

In striving to resolve this question recourse must be had to the enabling act. "We read the enabling act, as we are required to, as it is written by the Legislature, and not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration." (*RKO-Keith-Orpheum Theatres* v. *City of New York*, 285 App. Div. 374, 376 [amusement tax], citing *Saltser & Weinsier* v. *McGoldrick*, 295 N. Y. 499, *supra* [sales tax].)

Examination of the act or statutes reveals no prohibition against the imposition of the tax. The definition of "Receipts" is sufficiently broad to embrace proceeds derived from such a transaction as that in question. (Cf. *People ex rel. New York Cent. & Hudson Riv. R. R. Co.* v. *Roberts*, 32 App. Div. 113, 115-116 [a gross earnings tax].)

A "statute" has been defined as "An act of the legislature declaring, commanding, or prohibiting something". (Black's Law Dictionary, 4th ed.; *Matter of Van Tassel*, 119 Misc. 478, 481.) The statute neither commands nor prohibits the imposition of the tax but declares that a tax may be imposed upon all receipts received from a sale for the privilege of carrying on a business for profit. The legal maxim is that "words ought to be made subservient to the intent, not contrary to it." The relevant language of the Business Tax Law and regulations issued in conformity therewith, with respect to the remaining issue now being considered, goes no further than is permitted by the statute.

Judicial construction or interpretation may be applied or availed of if doubt, obscurity or ambiguity exists in the statute. If, however, its meaning be clear and it contravenes no constitutional prohibition or limitation, explanation need not be attempted. Equitable considerations alone neither authorize nor warrant judicial legislation. The Legislature may correct the condition if it deems it necessary.

Accordingly, the determination appealed from should be modified, on the facts and the law, so as to hold that exchanges between dealers of new cars with or without some cash payment are not taxable. As so modified the determination, insofar as it taxes the full trade-in value appearing in the bill of sale, and the proceeds from the resale of a used car received as a trade-in, is otherwise confirmed, without costs.

McNALLY, J. (concurring and dissenting in part). I concur insofar as the determination is confirmed and dissent in respect of the modification thereof.

Section 24-a of the General City Law enables, and the local law (Administrative Code of the City of New York, tit. B, ch. 46, as added by Local Law 44 of the 1948 Local Laws of the City of New York) imposes an excise tax for the privilege of carrying on or exercising for gain or profit within the city any trade, business, commercial activity, or the making of sales. So far as here relevant, the measure of the tax is gross receipts received in or by reason of any sale made, including property of any kind or nature, without deduction for cost of the property sold or any other expense. The petitioners' exercise of the privilege of carrying on for gain or profit activities within the ambit of the statute and local law is clear. That the said activities in whole or in part may not have resulted in gain or profit is immaterial. (*Matter of Bush Term. Co.*, 93 F. 2d 661; *Matter of Kerner Coal Co.* v. *McGoldrick*, 257 App. Div. 821.)

The measure of the tax is in the broadest terms and expressly includes property of any kind received in or by reason of any sale. The absence of an exclusion in respect of property so received, in the light of the broad sweep of the measure of the tax, requires the agreed value of such property to be included in gross receipts. (*Matter of Steinbeck* v. *Gerosa*, 4 N Y 2d 302, 308–309; *Hoffman* v. *City of Syracuse*, 2 N Y 2d 484, 488.)

The tax is imposed by the statute and local law and not by the regulations. (*Hoffman* v. *City of Syracuse, supra*, p. 492.) The applicable regulations are in conformity with the statute and local law and we are not required at this time to pass on the validity or scope of other or antecedent regulations. The motives attending petitioners' sale of their property are immaterial. Relevant is the transfer of title from petitioners to the purchasers in respect of petitioners' property. Thereby materializes the tax event, to wit, the sale from petitioners to their customer, be he dealer or consumer. The inevitable result is that the agreed value of the property received by petitioners in exchange is includible in the taxable gross receipts. The payment, either by petitioners or their vendee, of a sum which equalizes the difference between the properties involved serves to emphasize that a sale has eventuated which gives rise to gross taxable receipts.

The determination should be confirmed.

BREITEL, J. P., and RABIN, J., concur with STEVENS, J.; McNALLY, J., dissents in part and concurs in part in opinion; M. M. FRANK, J., deceased.

Determination modified, on the facts and on the law, so as to hold that exchanges between dealers of new cars with or without some cash payment are not taxable. As so modified, the determination, insofar as it taxes the full trade-in value appearing in the bill of sale, and the proceeds from the resale of a used car received as a trade-in, is otherwise confirmed, without costs. Settle order.