*555 OPINION OF THE COURT
Martin B. Stecher, J.
Petitioners are nonjudicial employees of the Unified Court System and also serve as representatives of various unions representing court officers and court clerks. They bring this proceeding pursuant to CPLR article 78 to obtain a declaration that the Office of Court Administration (OCA) is subject to the New York Freedom of Information Law (FOIL; Public Officers Law, § 84 et seq.), and for related relief.
Respondent Evans, Chief Administrative Judge of the Unified Court System of the State of New York, moves to dismiss the petition on the ground that it fails to state a cause of action as a matter of law, in that FOIL does not apply to the Unified Court System; that petitioners have already been provided with the documents which would be available to them under FOIL; and petitioners have not exhausted their administrative remedies to gain access to the records which they seek.
Disposing of the simplest contention first, petitioners’ status as members of the taxpaying public is separate and distinct from their status as participants in a pending administrative proceeding. The rights involved, and the remedies, are separate and distinct. Simply because a party is a litigant, or, by extension, involved in an administrative dispute, his rights under FOIL cannot be diminished. (Matter of Burke v Yudelson, 51 AD2d 673.)
Respondent’s contention that petitioners have received all documents to which they would be entitled should FOIL apply cannot be the end of the matter. Petitioner is not required to accept the assistant counsel’s conclusion. Further, agencies subject to the provisions of FOIL are required, pursuant to section 87 (subd 3, par [c]) of the Public Officers Law, to keep “a reasonably detailed current list by subject matter, of all records in the possession of the agency, whether or not available under this article” so that the issue of entitlement is not limited by bureaucratic fiat. Since OCA contends it is not subject to FOIL, it has no such list, and petitioners have no way of verifying whether they have, in fact, received all of the records to which they would be entitled under the statute. *556 Furthermore, the production of even voluminous documents cannot moot a proceeding to hold OCA obligated to abide by a law if, in fact, it applied.
This leaves only the question of whether OCA is one of “the courts of the state” (Public Officers Law, § 86, subds 1, 3), and, as such, outside the scope of FOIL.
In Babigian v Evans (104 Misc 2d 140), Justice Tyler examined the legislative policy which culminated in the enactment of FOIL. He rejected (p 142) the contention of respondent Evans that the Office of Court Administration “is in all respects exempt from * * * the Freedom of Information Law”. Although a notice of appeal was filed on September 23,1981, it does not appear that the appeal was perfected. In any event, it remains undecided. Furthermore, the issue submitted to Justice Tyler was not nearly so broad as the issue submitted here, as a consequence of which the learned Justice presented a narrow and limited holding. Under such circumstances, it would appear appropriate to decide the issue submitted on its own merits, drawing on Justice Tyler’s persuasive opinion, rather than hold that the respondent is collaterally estopped to deny petitioners’ contentions.
Respondent contends that the issue has been decided in its favor (Glatzer v Smith, 73 AD2d 562, app dsmd 49 NY2d 800, mot for lv to app den 51 NY2d 740). In Glatzer, petitioner sought directly from the Appellate Division via an article 78 proceeding, certain administrative records from the office of the Deputy Administrative Judge of the Civil Court. Numerous grounds for denial of the application were advanced including the Statute of Limitations. The Appellate Division dismissal, without opinion, made it impossible to determine whether the dismissal was on the merits for the reasons advanced here by the respondent, was for other reasons, or was because the petition was defective or the proceeding time barred. Glatzer is without precedential value.
FOIL gives access to “agency” records. “‘Agency,’” as defined by the statute, excludes “the judiciary or the state legislature.” (Public Officers Law, § 86, subd 3.) “‘Judiciary’ ” is, in turn, defined (subd 1) as “the courts of the state, *557 including any municipal or district court, whether or not of record.”
Ip determining the meaning of statutes, it is fundamental that ordinary words are to be given the meaning ordinarily ascribed to them. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 232.) Associated words generally are to be construed in connection with, and with reference to, the phrases surrounding them. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 239.) “Where the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists” (Bender v Jamaica Hosp., 40 NY2d 560, 561). The Legislature, in enacting FOIL intended the phrase “courts of the state” to have its commonly understood meaning — tribunals adjudicating rights and status — and not the strained meaning advanced by respondent (Babigian v Evans, supra).
Blackstone’s definition of a court required the presence of at least three constituent parts, namely, “ ‘The actor, or plaintiff, who complains of an injury done; the reus, or defendant, who is called upon to make satisfaction for it; and the judex, or judicial power, which is to examine the truth of the fact, to determine the law arising upon that fact, and, if any injury appears to have been done, to ascertain and by its officers to apply the remedy.’” (3 Blackstone’s Comm 25, cited in People ex rel. Pond v Board of Trustees of Vil. of Saratoga Springs, 4 App Div 399, 404).
The functions of the Office of Court Administration, on the other hand, are largely concerned with the staffing and physical operation of the courts, as opposed to the adjudicatory functions of “the courts of the state, including any municipal or district court, whether or not of record.” (Public Officers Law, § 86, subd 1.) OCA conducts statistical studies of trial court workloads; conducts seminars and informational conferences for both judicial and nonjudicial employees; handles assignments of staffing and projection of staffing needs of nonjudicial personnel; evaluates the administrative impact of Legislation on the courts; provides budgetary assistance and projections; and, finally, is the repository of certain records kept in the course of judicial and related proceedings in the State. The latter function is hereafter referred to. (Judiciary Law, § 212.) *558 That the chief administrator is himself a member of the judiciary is fortuitous only (Judiciary Law, § 210, subd 3) and hence irrelevant.
There is some judicial authority for the proposition that the administrative board of the judicial conference, most of whose powers devolved on the OCA and the chief administrator, was merely an administrative agency. Justice Silverman, formerly of this court, commented: “Pursuant to section 28 of article VI of the State Constitution, and section 212 of the Judiciary Law, the Administrative Board has the authority and responsibility for the administrative supervision of the unified court system, including the adoption of standards and policies of general application throughout the State relating to the appointment and promotion of employees. As such it performs the functions formerly performed by the State Civil Service Commission and the Department of Personnel in relation to the nonjudicial positions in the unified court system * * * the Administrative Board, like any administrative agency, is bound by its own rules.” (Matter of English v McCoy, 51 Misc 2d 311, 313-314, mod on other grounds sub nom. Matter of Conlon v McCoy, 27 AD2d 280, mod on other grounds 22 NY2d 356, mot for rearg den 22 NY2d 973.)
In an attempt to bolster OCA’s position, its counsel have submitted a letter from Carl M. Imlay, general counsel of the administrative office of the United States courts. In that letter, supplemented by various attachments, Mr. Imlay offers the opinion that the Federal Freedom of Information Act (FOIA; US Code, tit 5, § 552 et seq.) does not apply to the administrative office of the United States courts, which performs functions analogous to those of OCA. FOIA does not apply to “the Courts of the United States.” The position taken by Mr. Imlay, although entitled to serious consideration, is apparently not based upon a judicial determination; and in any event does not affect our statute.
Since FOIL was patterned after FOIA, although hardly identical to it, Federal rulings as to FOIA’s scope could be instructive in construing our own law (Matter of Polansky v Regan, 103 Misc 2d 696). Yet none of the Federal cases cited by respondent is in point. By and large, they deal *559 with the availability of records, such as presentence reports, prepared for the use of the trial court in the judicial process. (See, e.g., Cook v Willingham, 400 F2d 885.) In the one case where an administrative office of a court was involved, the suit was directed against an employee of that office. The court simply held that FOIA created rights of action against agencies only, not individual employees. The holding that FOIA did not apply to the court itself referred to the status of the Tax Court, not its administrative arm, as a party defendant (Ostheimer v Chumbley, 498 F Supp 890).
The Office of Court Administration, it is clear, is an agency, not a court, and it is therefore subject to the Freedom of Information Law. In so holding, I note, as did Justice Tyler, that such finding is consistent with the legislative declaration of intent (Public Officers Law, § 84). In accordance with the express intent of the Legislature, the law is to be broadly construed to allow maximum access to records, and a liberal approach in interpretation is called for (Matter of Pooler v Nyquist, 89 Misc 2d 705; Babigian v Evans, supra).
This holding, however, does not mean that OCA must make all records in its possession available to the public. Thus, for example, OCA, in its discretion, may withhold records protected from disclosure by State or Federal statute; records which, if disclosed, would constitute an unwanted invasion of privacy of an individual; records compiled for law enforcement purposes, where the release of such records would interfere with law enforcement investigations, judicial proceedings, or the confidential rights of a defendant; or reveal the identity of confidential sources. (Public Officers Law, § 87, subd 2.) Even though exempt, however, such documents must be listed by subject matter and the list, as distinguished from the documents, must be made available (Public Officers Law, § 87, subd 3, par [c]).
OCA is the custodian of many records relating to the activities of the courts as the repository designated by the NYCRR, the official codification of New York State’s rules and regulations. These include information relating to the treatment of the mentally ill and other statements of a confidential nature required to be filed according to court *560 rules. These rules and regulations enjoy the force of an act of the Legislature. (See, generally, Dubendorf v New York State Educ. Dept., 97 Misc 2d 382, mod on other grounds 71 AD2d 837; see People v Malmud, 4 AD2d 86.) Even if these Appellate Division rules had not been formally codified, such statements would surely be protected from disclosure under the statutory exemption. “The word ‘statute’ in its broadest sense may be construed as meaning regulation, rule, law, legal process” (Matter of Van Tassel, 119 Misc 478). Furthermore, if these rules were not to be given statutory force, then the direction that the information contained in these documents and affidavits was to be kept confidential would be doubtful, ab initio, no matter who the custodian of these records was. It appears that such records could also come under the “invasion of privacy” exemption previously referred to.
More significantly, documents provided by those performing adjudicatory functions are exempt, no matter in whose hands they repose.
In Walter, Conston, Schurtman & Gumpel v United States Dept. of Justice (179 Civ 2918), the petitioning law firm, on behalf of an undisclosed client, sought material submitted to a Grand Jury in the District of Columbia, then in the possession of the Multinational Currency Task Force of the Fraud Section, Criminal Division, Department of Justice. Judge Goettel held, “The fact that certain grand jury documents may, temporarily, be in the physical possession of the Department of Justice [acting, in a sense, as a custodian for the grand jury] does not convert them into agency records. As was held by the Ninth Circuit in Warth v Department of Justice, 595 F. 2d 521, 523 (9th Cir. 1979), ‘as a matter of law, a court document is not ah “agency record” for purposes of the FOIA even when held by the (Department of Justice).’ ” In a footnote, Judge Goettel noted, “Exemption 3 of the FOIA provides that the Act shall not apply to matters * * * specifically exempted from disclosure by statute * * * provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.”
*561 It appears that such interpretation of the statutory confidentiality exemption would provide OCA with protection for that which it is validly required to withhold from the public, while freeing records otherwise discoverable.
Finally, the document demand is concededly improper in a FOIL context. Petitioners contend that before the demand is redrafted, they need to know exactly what documents OCA has in its possession. Since it has been determined that OCA is subject to FOIL, OCA is obligated to compile the list of documents required by section 87 (subd 3, par [c]) of the Public Officers Law, and formulate uniform rules and regulations, pursuant to section 87 (subd 1, par [b]) of the statute, governing examination and copying of available records. Such rules and regulations, as required by statute, shall be formulated within 60 days after entry of the judgment to be settled herein. Compilation of the list and service of a copy of it upon the attorneys for the petitioners herein shall be accomplished within the same period. After perusal of such list, petitioners may take such steps as they deem advisable. The court can see no need for a hearing at this time.