[No. 51741–0.   En Banc.   December 4, 1986.]

THOMAS B. NAST, *Respondent,* v. M. JANICE MICHELS,
ET AL, *Appellants.*

*Norm Maleng, Prosecuting Attorney,* and *Fred Kaseburg, Deputy,* for appellants.

*Thomas B. Nast,* pro se, *Fred Diamondstone,* and *Stephen K. Strong* (of *Bendich, Stobaugh & Strong*), for respondent.

GOODLOE, J.—Appellants, King County Superior Court Clerk, King County Department of Judicial Administration, and King County appeal the trial court's decision that the public disclosure act, RCW 42.17 (PDA), applies to superior court case files and coin–operated copiers. The appellants also appeal the trial court's award of attorney fees pursuant to the PDA to respondent Thomas B. Nast and his cocounsel. We reverse the trial court's decision with respect to application of the PDA and disallow attorney fees. We affirm its decision based on the common law.

The controversy arose when King County Executive Randy Revelle, in a plan to reduce the county's budget by $2.4 million, cut $40,000 from the King County Department of Judicial Administration's budget for court case file check–out services. The reduction would limit file check–out to a prior appointment basis only. The Superior Court Clerk replaced the existing policy permitting on–demand access to court case files with a procedure requiring 1–day advance notice before the court case files would be made available with same day access provided in emergency or

exigent situations. The realized effects of this change were inconvenience and costly delays to attorneys and others seeking access to the court case files.

Nast, an attorney, filed suit on his own behalf initially alleging that the policy of a 1–day turnaround time for viewing court case files should be enjoined because it violated the PDA, the common law right of access to the records, and the state and federal constitutions. Nast filed an amended complaint alleging an additional violation of the PDA because the fees charged for photocopying court case files were allegedly more than actual costs. Nast filed a second amended complaint alleging that charges for copying microfilmed files were excessive also.

The parties entered into two stipulations. The first, entitled "Stipulation as to Certain Facts", established the factual background of the dispute and covered *inter alia* previous and current file access policies and procedures. The second entitled "Stipulation for Partial Settlement of Claims and Order Approving Stipulation" stated that if the PDA applied the allowable copy charges would be 15 cents for paper copies and 25 cents for microfilm copies.

On the file access issue, both parties moved for partial summary judgment. The court entered partial summary judgment in favor of Nast finding the new policy violated the PDA and the common law because the files were not "promptly available". Supplemental Clerk's Papers, at 59, 63. Specifically, the trial court found the case files were public records of an agency within the meanings of the PDA. The court ordered the Clerk to make court files "promptly available in the most timely possible action". Supplemental Clerk's Papers, at 65. On the copying charges issues Nast moved for summary judgment. The court found the PDA applied and ordered a reduction of charges to the stipulated levels.

After prevailing on all issues, Nast moved for an award of attorney fees and costs pursuant to RCW 42.17.340. The court awarded $34,130.45 including costs and a multiplier to Nast as a pro se attorney and his cocounsel.

Appellants sought and were granted direct review pursuant to RAP 4.2(a)(4).

The threshold issue is whether the PDA provides access to the King County Superior Court case files which are maintained by the King County Department of Judicial Administration. The parties stipulated that the files covered by the lawsuit are

> [t]he official Superior Court records, indexes and case files . . . maintained by the clerk in the King County Department of Judicial Administration. These court records and files include all pleadings in filed court cases. Such court cases include civil lawsuits for damages, declaratory judgment proceedings, arbitration confirmations, felony criminal cases, actions involving title to real property, unlawful detainer actions, appeals from Justice and Municipal courts, probate matters, guardianship matters, juvenile court matters, divorces, marital dissolutions and petitions for legal separation, paternity actions, guardianship cases, adoptions, mental illness cases, alcohol treatment cases, receiverships, actions to abate nuisances, injunctions, writs of certiorari, prohibition, and mandamus and Superior Court reviews of administrative proceedings in King County, Washington.

Supplemental Clerk's Papers, at 33–34.

■ The public has a common law right of access to court case files. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978); *In re NBC,* 653 F.2d 609, 612 (D.C. Cir. 1981); *Cowles Pub'g Co. v. Murphy,* 96 Wn.2d 584, 588, 637 P.2d 966 (1981). This right has been described as "fundamental to a democratic state." *United States v. Mitchell,* 551 F.2d 1252, 1258 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications, Inc., supra.* The common law right to inspect and copy judicial records, however, is not absolute. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon,* at 598. Court case files are generally available except where specific reasons exist for not disclosing a case file, *e.g.,* adoption files, juvenile files.

"Because of the difficulties inherent in formulating a broad yet clear rule to govern the variety of situations in which the right of access must be reconciled with legitimate countervailing public or private interests, the decision as to access is one which rests in the sound discretion of the trial court." *In re NBC,* at 613; *see Nixon,* at 599; *Cowles,* at 589. Most of the court case files at issue in this case were and are available by common law access. Nast was not denied access to a particular file, but rather challenged the new access procedure.

Because the common law provides a right of access to court case files and because of the language of the public records section of the PDA, we hold the PDA does not provide access to court case files.

■ The PDA, RCW 42.17, was enacted by Initiative 276 in 1972. *Fritz v. Gorton,* 83 Wn.2d 275, 517 P.2d 911, *appeal dismissed,* 417 U.S. 902 (1974). An argument in support of the initiative explained that the initiative sought to rectify a concern over "secrecy in government and the influence of private money on governmental decision making." Official Voters Pamphlet 10 (1972). The PDA addresses four areas: disclosure, campaign finances, lobbying and public records. After stating 11 purposes, its purpose section declares the act is to be construed to promote

complete disclosure of all information respecting the financing of political campaigns and lobbying, and the financial affairs of elected officials and candidates, and full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected.

RCW 42.17.010.

The PDA area involved in this case addresses access to public records. RCW 42.17.250–.340. It requires agencies to make public records available to the public for inspection and copying. RCW 42.17.260(1), .270, .290.

The PDA provides statutory definitions for agency and public records in a general definition section applying to

the entire PDA, RCW 42.17.020:

(1) "Agency" includes all state agencies and all local agencies. "State agency" includes every state office, department, division, bureau, board, commission, or other state agency. "Local agency" includes every county, city, town, municipal corporation, quasi–municipal corporation, or special purpose district, or any office, department, division, bureau, board, commission, or agency thereof, or other local public agency.

. . .

(26) "Public record" includes any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local *agency* regardless of physical form or characteristics.

(Italics ours.)

These are very broad definitions which could be interpreted to include court case files held by the Department of Judicial Administration. Court case files historically have been referred to as public records. *See* RCW 2.32.050(10). It is precisely because they are deemed public records that the common law provides access to them. The PDA was enacted to allow access by the public to records held by an "agency" concerning "the conduct of government or the performance of any governmental or proprietary function". RCW 42.17.020(26).

The King County Department of Judicial Administration by its name falls within the definition of agency. Furthermore, King County Charter 350.20 provides that it is an executive department. The Department, however, is a unique institution. Although its funding and directives place it within the elective realm, its function as custodian for court case files places it within the judicial realm. "Courts have the inherent authority to control their records and proceedings." *Cowles,* at 588. Court case files are generated by litigation activity occurring solely in the judicial branch of government. A decision regarding PDA access to court case files should not vary between superior courts because of the administrative alignment of the clerk's office.

Because court case files are within the province of the judiciary we must determine whether the judiciary and its case files are under the realm of the PDA. The PDA definitions do not specifically include either courts or case files. A reading of the entire public records section of the PDA indicates and we find that they are not within the realm of the PDA.

The public records section of the PDA begins by requiring each agency to publish procedures for inspection and copying. This section was unnecessary for court clerks because the clerk by virtue of another statute has the duty "[t]o publish notice of the procedures for inspection of the public records of the court." RCW 2.32.050(10).

The next section outlines the documents and indexes to be made public. RCW 42.17.260. In general, an agency is to make *all* public records available. RCW 42.17.260(1).

Exemptions are provided within RCW 42.17.260(1) and RCW 42.17.310. RCW 42.17.260(1) provides that "to prevent an unreasonable invasion of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; however, in each case, the justification for the deletion shall be explained fully in writing." RCW 42.17.310 lists 14 exemptions from public copying and inspection. Included within these exemptions is information whose disclosure would violate specific types of personal privacy and vital governmental interests. In most cases, the exemption status can be overcome if the personal information or vital governmental interest information can be deleted. However, under RCW 42.17.310 an agency which does not disclose any record in part or whole must also include a statement naming and explaining application of the exemption authorizing withholding the record.

The PDA makes no specific exemptions for the many statutory areas honed from the common law right of access to court files. The Legislature with the court's concurrence has for a variety of reasons including privacy interests excluded certain court case files from public access. These

court case files include juvenile court files, RCW 13.50.050; artificial insemination records, RCW 26.26.050(3); paternity action files, RCW 26.26.200; adoption records, RCW 26.33-.330; and mental commitment files, RCW 71.05.390.

Nowhere in the PDA are included these well developed and engrafted exemptions. If the PDA applied to court case files, these developed exemptions could easily have been incorporated. To follow the respondent's suggestion that the PDA applies generally to court case files would undo all that has been developed. Furthermore, it would place on the court clerk the onerous burden of deleting personal information and justifying such deletions. This is an unreasonable burden when one considers that court case files by their nature involve personal, private matters. Determinations of what particular litigation matters should and should not be disclosed have already been made in other statutes.

Contrary to respondent's assertion, no legislative enactments have recognized a general applicability of the PDA to court case files. Two enactments proffered by respondent regarding Judicial Qualifications Commission proceedings records, RCW 2.64.110, and statewide special inquiry judge petitions, RCW 10.29.030, do not support his position. The Judicial Qualifications Commission is not a court, but an agency whose job is to investigate judicial officers. The statewide petitions are not court records.

We hold the PDA does not apply to court case files because the common law provides access to court case files, and because the PDA does not specifically include courts or court case files within its definitions and because to interpret the PDA public records section to include court case files undoes all the developed law protecting privacy and governmental interests.

■ Because we find the PDA does not apply, we need not determine whether next day access to court case files complies with the PDA requirement that public records be "promptly available". RCW 42.17.270. We do need to determine, however, whether next day access to court files

is adequate under common law access. We have found no case law specifically addressing whether a 1–day turnaround time is too slow. Some cases have found that common law access must be provided "contemporaneously". *In re Continental Ill. Secs. Litig.*, 732 F.2d 1302, 1310 (7th Cir. 1984). However, "contemporaneously" in that case meant during the course of the trial.

We view court case files as necessary and important tools in the attorney's profession. Same day access by attorneys and the general public to court case files, otherwise available, is vital. We hold a procedurally implemented 1–day turnaround time is unacceptable.

Next, Nast argued and the trial court found that the PDA controls the amount that can be charged to copy court case files on King County Superior Court copying machines. RCW 42.17.300 states: "*Agencies* may impose a reasonable charge for providing copies of *public records* and for the use by any person of agency equipment to copy public records, which charges shall not exceed the amount necessary to reimburse the agency for its actual costs incident to such copying." (Italics ours.) Because of our determination that the PDA does not control access to court case files, RCW 42.17.300 does not govern the amount that can be charged to copy case files. The trial court erred when it ordered a reduction in court case file copying charges pursuant to the PDA.

Although the PDA does not control the copying charge issue, an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court. *Reed v. Streib*, 65 Wn.2d 700, 709, 399 P.2d 338 (1965). There is a common law right to make photocopies of court case files. *See United States v. Criden*, 648 F.2d 814, 823 (3d Cir. 1981); *In re NBC*, 653 F.2d 609, 612 (D.C. Cir. 1981); *Moore v. Board of Chosen Freeholders*, 76 N.J. Super. 396, 184 A.2d 748 (1962). The right to photocopy court case files would be impermissibly restricted if the only machines available for copying such files charged an excessive fee. In King County Superior

Court, the court case files must be photocopied on designated copiers. We hold that cost for copying court case files at King County Superior Court should not exceed a reasonable level because "the court . . . should [not] profit from the public's exercise of its common law right." *United States v. Mitchell,* 551 F.2d 1252, 1265 (D.C. Cir. 1976), *rev'd on other grounds sub nom. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 55 L. Ed. 2d 570, 98 S. Ct. 1306 (1978).

Nast was awarded attorney fees and costs for bringing this action pursuant to RCW 42.17.340(3). Under RCW 42.17.340(3), when a plaintiff prevails against an agency in an attempt to inspect or copy public records under the PDA, that person is entitled to litigation costs including reasonable attorney fees. Because we hold that Nast does not prevail under the PDA, and there are no other grounds to support attorney fees in this case, the trial court's award of fees is reversed.

The trial court's decisions with respect to application of the PDA are reversed and its decisions premised on the common law are affirmed.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, and CALLOW, JJ., concur.

DURHAM, J. (dissenting)—By holding that the public disclosure act (PDA) does not apply to superior court case files, the majority rejects the clear language of the act and ignores prior case law of this court. Thus, I dissent.

As a starting point, the PDA itself establishes that the act is to be construed liberally, especially given the strength of its language. Some of this court's earlier statements in this regard bear repeating:

> The Washington public disclosure act is a strongly worded mandate for broad disclosure of public records. It states that, "mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be

assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17-.010(11). It further declares that "[t]he provisions of this chapter shall be liberally construed to promote . . . full access to public records so as to assure continuing public confidence [in] . . . governmental processes, and so as to assure that the public interest will be fully protected." Declarations of policy in an act, although without operative force in and of themselves, serve as an important guide in determining the intended effect of the operative sections. *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975). Declarations of policy requiring liberal construction are a command that the coverage of an act's provisions be liberally construed and that its exceptions be narrowly confined. *Mead School Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 140, 145, 530 P.2d 302 (1975).

*Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 127–28, 580 P.2d 246 (1978).

A liberal construction in this case is made even more compelling because of the voters' intent in passing this initiative. The citizens of this state directly enacted the PDA by adopting Initiative 276 in a 1972 election. Initiative 276 had an "extraordinarily broad range of citizen support". *In re Rosier,* 105 Wn.2d 606, 618–19, 717 P.2d 1353 (1986) (Andersen, J., dissenting in part, concurring in part). The intent of the voters can be determined by examining the information they read in the voters pamphlet. *Estate of Turner v. Department of Rev.,* 106 Wn.2d 649, 654, 724 P.2d 1013 (1986); *Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d 455, 460, 722 P.2d 808 (1986). As we stated in *Hearst*:

The expansive disclosure requirement as established by the language of the act is further solidified by reference to the statement in the voters pamphlet explaining the act when it was Initiative 276: "The initiative would require all . . . 'public record' of both state and local agencies to be made available for public inspection and copying by any person asking to see or copy a particular record . . ." Further, the statement expressly provided that the law "makes all public records and documents in

state and local agencies available for public inspection and copying" except those exempted to protect individual privacy and to safeguard essential governmental functions. Official Voters Pamphlet, 1972 General Election, November 7, 1972, at pages 10, 108.

*Hearst,* at 128.

With these general considerations in mind, I turn to the application of the PDA to the facts of this case. The PDA requires that "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying all public records." RCW 42.17.260(1). Both the terms "agency" and "public records" are defined in the act. RCW 42.17.020(1), (26). If these definitions are satisfied, then the act applies absent a specific exemption under the PDA, RCW 42.17.310, and absent an unreasonable invasion of personal privacy. *In re Rosier, supra.* Here, no argument has been made that same–day access to court case files represented an invasion of privacy, nor that same–day access of those files triggers any of the specific exemptions. Therefore, if the definitions of "agency" and "public records" are met, the PDA applies. I conclude that such is the case.

Under the PDA, "agencies" include county departments. RCW 42.17.020(1). The King County Department of Judicial Administration is a county executive department. King County Charter 350.20. Hence, it qualifies as an "agency". The majority holds, however, that the Department of Judicial Administration is not covered by the PDA because the PDA does not cover courts. We need not decide, however, whether the PDA applies to courts, an issue about which the PDA is far from clear. Here, the Department of Judicial Administration is an executive, rather than a judicial, department. King County Charter 350.20. Applying the PDA to the Department of Judicial Administration does not apply it to the courts. New York courts recognize this distinction and apply their public disclosure statute to court administration offices, even though the judiciary is specifically excluded from that statute's coverage. *Babigian*

*v. Evans,* 104 Misc. 2d 140, 427 N.Y.S.2d 688 (Sup. Ct. 1980); *Quirk v. Evans,* 116 Misc. 2d 554, 455 N.Y.S.2d 918 (Sup. Ct. 1982). Therefore, whether or not Washington's public disclosure act covers courts is irrelevant to its application to the Department of Judicial Administration.

It is even easier to demonstrate that court case files are "public records". "Public records" are defined to include "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency . . ." RCW 42.17.020(26). The majority concedes that court case files are generally considered to be public records. The files also qualify under the above definition because the files are written, they relate to performance of a government function (adjudication of disputes), and they are retained by a county agency (the Department of Judicial Administration).

Therefore, I conclude that the public disclosure act applies to King County court case files. Further arguments presented by the majority, however, merit some additional attention.

The majority bases its holding on three arguments: The PDA does not apply to give access to court case files because (1) the common law provides that access, (2) the PDA does not specifically include courts or their case files in its definitions, and (3) any other holding would undo developed law protecting privacy and governmental interests. Each of these arguments conflicts with established legal principles.

The majority first argues that a statute is inoperative to the extent that a common law rule already exists. This argument runs afoul of the principle that unambiguous statutes are to be read in conformity with their obvious meaning, *without regard to previous common law. State v. Bergeron,* 105 Wn.2d 1, 15, 711 P.2d 1000 (1985); *Teeter v. Lawson,* 25 Wn. App. 560, 564, 610 P.2d 925 (1980). The common law simply does not preclude legislative action. There is no reason that the common law and statute cannot

coexist. New legislation is presumed to be consistent with prior decisions, absent legislative intent to the contrary. *State v. McCullum,* 98 Wn.2d 484, 493, 656 P.2d 1064 (1983); *State v. Bushnell,* 38 Wn. App. 809, 810–11, 690 P.2d 601 (1984). The government's refusal to disclose a document should be actionable if the refusal violated either the common law or the PDA. Whether the common law provides access is irrelevant to the issue of whether the PDA also provides access.

Second, the majority holds that the PDA does not apply because the statutory definitions do not *specifically* apply to courts and court case files. As discussed above, however, the definitions set out broad categories which are more than sufficient to include case files and the Department of Judicial Administration within the scope of the PDA. That the definitions do not contain the words "court case files" is, of course, irrelevant if these files fall within the categories of items set out by the definition.

Finally, the majority holds that the PDA is inapplicable because it fails to specifically exempt certain statutory provisions which keep private juvenile court files, artificial insemination records, paternity action files, adoption records, and mental commitment files. The majority cites no authority to support its assertion that developed case law regarding the confidentiality of these case files would be nullified if the PDA applies. In fact, case law indicates the contrary. Each of the protections mentioned by the majority has been adopted into statute. The PDA would not override those statutes, which are far more specific than the broad provisions of the PDA. Conflicting statutes are construed so that the more specific statute controls. *See, e.g., In re Estate of Little,* 106 Wn.2d 269, 283–84, 721 P.2d 950 (1986); *Miller v. Sybouts,* 97 Wn.2d 445, 448, 645 P.2d 1082 (1982); *Johnson v. Central Vly. Sch. Dist. 356,* 97 Wn.2d 419, 428–29, 645 P.2d 1088, *cert. denied,* 459 U.S. 1107 (1982). The more specific statute applies even if it was enacted prior to the general statute. *Christianson v. Spalding,* 593 F. Supp. 500, 504 n.7 (E.D. Wash. 1983) (citing

*Simpson v. United States,* 435 U.S. 6, 15, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978)). Statutes authorizing the sealing of otherwise public records are clear pronouncements of public policy which override a public disclosure statute. *See, e.g., State ex rel. Bilder v. Delavan,* 112 Wis. 2d 539, 554, 334 N.W.2d 252 (1983). At least one Washington court has recognized these principles by holding that the disclosure provisions of the PDA have no effect on the confidentiality of adoption records under RCW 26.32.150. *In re Sage,* 21 Wn. App. 803, 811–12, 586 P.2d 1201 (1978), *review denied,* 92 Wn.2d 1002 (1979).

Simply put, none of the majority's numerous arguments justify its position. The PDA applies to this case, the Department of Judicial Administration is an executive, not judicial, agency, and all the developed law protecting privacy and government interests remains fully functional. The majority opinion has needlessly restricted the scope of the PDA, a statute of great societal importance which is to be liberally construed.

ANDERSEN, J., concurs with DURHAM, J.

Reconsideration denied February 12, 1987.