IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| COLUMBIA DEBT RECOVERY, LLC, a Washington limited liability company, | No. 86812-8-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JORDAN PIERCE, DONTE GARDINER, GUSTAVO CORTEZ, TOWANA PELTIER, and DARIUS MOSELY, | |
| Respondents. | |

COBURN, J. — Columbia Debt Recovery, LLC (CDR) appeals the trial court's award of reasonable attorney fees to Jordan Pierce and Donte Gardiner following a settlement agreement. We affirm the trial court's order granting attorney fees but reverse and remand for entry of findings and conclusions explaining the calculation of the fee award.

## FACTS

CDR is a licensed collection agency. In September 2019 CDR filed suit against Pierce and Gardiner in King County District Court to recover rent and fees allegedly owed under a residential lease[1] totaling $15,527.32.

---

[1] Pierce and Gardiner had previously vacated their former shared apartment at "The Eden" apartments in January 2019. The Eden was owned by Belkorp Holdings, Inc.

In February 2020 the trial court entered a default judgment against Pierce and Gardiner based on their failure to respond. A judgment was entered in favor of CDR for $17,770.33. The amount consisted of the principal judgment, prejudgment interest, and additional fees. Pierce and Gardiner paid an attorney $100 to investigate the basis for the judgment. The attorney brought a successful motion to vacate the default judgment.

In November Pierce and Gardiner filed their answer and counterclaims in King County District Court. The case was subsequently transferred to King County Superior Court. Pierce and Gardiner denied that they owed the $15,527.32 unpaid balance when they moved out of their former apartment. Additionally, Pierce and Gardiner alleged that CDR was illegally charging prejudgment interest. Among other counterclaims, Pierce and Gardiner brought a case against CDR on behalf of themselves and a prejudgment interest class for:

> All persons who lost money or property within four years prior to the filing of this pleading as a result of [CDR's] assessing interest on an alleged debt arising from a residential tenancy in the State of Washington, where [CDR] added to the tenant account interest charged from the date the tenant moved out.

Pierce and Gardiner alleged that CDR added unlawful interest charges in violation of multiple provisions of Washington's Collection Agency Act, chapter 19.16 RCW, which constituted per se violations of Washington's Consumer Protection Act, chapter 19.86 RCW, as an unfair or deceptive practice that occurs in trade or commerce. RCW 19.86.020.

Pierce and Gardiner amended their counterclaims five times between February 2021 and May 2023. Throughout the amended counterclaims, Pierce and Gardiner

---

(Belkorp) and managed by Thrive Communities, Inc. (Thrive). Thrive assigned its claim against Pierce and Gardiner to CDR.

2

maintained their original counterclaim against CDR as proposed representatives of the prejudgment interest class.[2]

In October 2021 Pierce and Gardiner moved for class certification of the prejudgment interest class, which CDR opposed. In March 2022 the trial court denied class certification of the prejudgment interest class. The trial court concluded that Pierce and Gardiner did not establish common issues among the class members because a determination of whether prejudgment interest was properly charged to a proposed class member would require an individual fact-finding process and "individualized proof that they suffered some injury to their business or property." Pierce and Gardiner sought discretionary review, which was denied by this court's commissioner in October 2022.

On remand, in early 2023, Pierce and Gardiner filed their third and fourth[3] amended counterclaims, wherein they adjusted the definition of the prejudgment interest class to:

> All former tenants whose accounts Thrive placed with CDR for collection and who lost money or property on or after November 6, 2016 as a result of CDR's assessing interest on an alleged debt calculated from the date the tenant moved out, where the alleged debt includes amounts allegedly due for cleaning or repairs to the unit.

CDR subsequently moved for the trial court to deny class certification of Pierce and Gardiner's counterclaims against CDR and strike class allegations. CDR argued in part that because Pierce and Gardiner did not make prejudgment interest payments to

---

[2] The amendments varied as to the subject of their changes, including, for example, changing the name of "The Eden" to Belkorp and joining additional tenants who asserted claims against Thrive. As we note elsewhere, Pierce and Gardiner also amended their counterclaims to narrow the definition of the proposed prejudgment interest class.

[3] Pierce and Gardiner's fourth amended counterclaims corrected a date error.

CDR,[4] their alleged injury of paying an attorney $100 to vacate the default judgment against them "is atypical of the class members they propose to represent."

In May Pierce and Gardiner filed fifth amended counterclaims, wherein they joined Gustavo Cortez, Darius Mosely, and Towana Peltier (third-party plaintiffs) as additional proposed representatives of the prejudgment interest class.[5] Each of these third-party plaintiffs had made prejudgment interest payments to CDR. The trial court denied CDR's motion to deny class certification and strike class allegations the following month.

In September CDR entered into a settlement agreement and release of claims with Pierce and Gardiner and the third-party plaintiffs. The settlement reads:

> This Settlement Agreement and Release of Claims ("Settlement" or "Agreement") is entered into as of the last date of any signature below by and among:
>
>    (a) Columbia Debt Recovery, LLC,
>
>    (b) Gustavo Cortez, Towana Peltier and Darius Mosely, individually and as representatives of the CDR Class, as defined below; and
>
>    (c) Jordan Pierce and Donte Gardiner, individually.
>
>    NOW, THEREFORE, in consideration of the covenants and agreements set forth in this Agreement, Class Representatives, the CDR Class, CDR, Pierce and Gardiner, as defined herein, for themselves and through their undersigned counsel, agree to the following settlement, subject to Court approval, under the following terms and conditions.

The agreement defines individual "Counterclaim Plaintiffs" as Pierce and Gardiner and defines "Class Representatives" of the CDR class as third-party plaintiffs Cortez, Peltier,

---

[4] Though allegedly charged prejudgment interest, it is undisputed that Pierce and Gardiner did not pay prejudgment interest to CDR.

[5] The fifth amended counterclaims further narrowed the proposed prejudgment interest class to charged or paid prejudgment interest specifically arising out of Washington state tenancies.

and Mosely. "Parties" is defined as "the Class Representatives, CDR, and Counterclaim Plaintiffs."

The agreement's terms were determined "by mutual agreement after extensive negotiation, with consideration by and participation of counsel for all Parties." The agreement absolved all claims between CDR and Pierce and Gardiner:

> 6.03    Mutual Individual Releases by CDR and Counterclaim Plaintiffs. Upon the Effective Date, CDR and Jordan Pierce and Donte Gardiner shall mutually release each other from all claims relating to or arising out of Pierce and Gardiner's CDR account … and CDR's claims and Pierce and Gardiner's individual counterclaims in this action shall be dismissed with prejudice in the final approval order.

(Boldface omitted.)

CDR agreed to pay a class fund of $87,000 to CDR "Class Members," including the class representatives. CDR also agreed to pay individual $1,000 "Service Award[s]"[6] to each of the class representatives. Class representatives, on behalf of themselves and each class member, agreed to "discharge[] with prejudice" all claims "based on the factual predicate asserted by Class Representatives against CDR in this Action that CDR demanded or collected excessive prejudgment interest."[7]

The agreement includes an attorney fee provision that authorized class counsel to request attorney fees and costs after the court's entry of the preliminary approval order. Under the terms of the agreement, CDR reserved a right to oppose the attorney fee request. The agreement states that "CDR reserves the right to oppose Class

---

[6] The settlement agreement defines "Service Award" as "the payment to the Class Representatives for their time and effort in connection with this action in an amount approved by the Court."

[7] The agreement specifies that released class claims do not include any claim assigned to CDR against Pierce and Gardiner after the instant case "was first commenced."

Counsel's application for an award of attorneys' fees, costs, and expenses." The agreement also states,

> The attorneys' fees awarded [by] the Court may be addressed by the Court in the Final Approval Order and Judgment or in a separate order and judgment. … CDR reserves the right to appeal the amount of attorney fees imposed by the Court.

In addition to the parties, the settlement was signed by the attorneys for class representatives, class members, and counterclaim plaintiffs Pierce and Gardiner, as well as the attorneys for CDR.

In October the trial court preliminarily approved the parties' settlement agreement and release of claims. The court granted preliminary certification of the CDR class, defined as:

> All former tenants of properties in Washington state whose accounts Thrive placed with CDR for collection; and who paid any money on or after November 6, 2016 that CDR allocated to prejudgment interest calculated from the date the person moved out of a Thrive rental unit; and whose account includes amounts allegedly due for cleaning and repairs to the rental unit associated with the account.

The court appointed third-party plaintiffs Cortez, Peltier, and Mosely as class representatives. The court explained that at the final settlement approval hearing, "[t]he court will also consider Class Counsel's motion for attorneys' fees and costs and for service award to the class representatives, and rule on any other matters that the Court deems appropriate."

In November class counsel filed a motion for "attorneys' fees and costs for their work securing a settlement for the CDR Class." In the motion, class counsel supported its request by stating:

> This litigation has been extremely hard fought over more than four years. … Even after the Court denied class certification in the matter, Class

Counsel and the Class Representatives put the interests of absent class members ahead of their own, seeking interlocutory review of the order, and then defeating CDR's motion to deny class certification and strike the class allegations. But for those efforts, the Settlement Class would have recovered nothing.

Class counsel stated that in addition to "an excellent outcome for the class members," the settlement results in the dismissal of CDR's claims against Gardiner and Pierce, "relieving them of an alleged debt of more than $17,000."

Class counsel asserted that because the class' main claim against CDR is a per se violation of the CPA and "the Class prevailed on that claim, recovering approximately 83% of the total alleged damages, Class Counsel is entitled to a reasonable attorney's fee under RCW 19.86.090 [of the CPA]."[8] Class counsel asserted a lodestar attorney fee amount of $314,181.21 and requested the trial court to award a lesser amount of $300,000 in attorney fees and an additional $3,430.50 in litigation costs.[9] CDR opposed the attorney fee request, arguing in part that the attorney fees were not segregated and the request included time spent on unsuccessful efforts.

In March 2024 the trial court entered an order granting class counsel attorney fees and approved $1,000 service awards to be individually paid to class representatives Cortez, Peltier, and Mosely. The court granted class counsel $285,520.71 in attorney fees and $3,430.50 in litigation costs. The trial court found

---

[8] RCW 19.86.090 provides in part:
    Any person who is injured in his or her business or property by a violation of RCW 19.86.020, 19.86.030, 19.86.040, 19.86.050, or 19.86.060, or any person so injured because he or she refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of RCW 19.86.030, 19.86.040, 19.86.050, or 19.86.060, may bring a civil action in superior court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit, including a reasonable attorney's fee.
[9] In its motion, class counsel asserted that it segregated out from the fee request any work that was only done to advance claims against Belkorp and Thrive.

7

that the Class Representatives and Third-Party Plaintiffs Gustavo Cortez, Towana Peltier, and Darius Mos[e]ley[10] and that Defendants and Counterclaim Plaintiffs Donte Gardiner and Jordan Pierce prevailed on their claims brought under RCW 19.86.090 and as a result are entitled to their costs, including a reasonable attorney's fee.

The order continues:

The Court finds that class counsel's standard hourly rates are reasonable and approves them.
…
The Court has reviewed the Class Counsel's declarations and billing records submitted in support of the motion. The Court finds that Class Counsel's time records provide more than the "reasonable documentation of the work performed" that is required. … The time records show that Class Counsel and their staff billed a total of 499 hours, corresponding to $285,520.71 based on the rates stated above. The court finds this amount to be a reasonable lodestar.
…
The Court also reviewed CDR's objections to the time. The Court finds the objections without merit.

Third-party plaintiffs and class representatives Cortez, Peltier, and Mosely later filed a motion for final approval of the class action settlement with CDR.[11] CDR filed a response, again objecting to the attorney fee award.[12]

Following a hearing on May 3rd,[13] the trial court entered its order granting final approval of the settlement and disposing of all claims between parties to the settlement.

---

[10] The record varies as to the spelling of class representative Darius Mosely's last name. This opinion uses the spelling shown below Mosely's signature line in the settlement agreement, which is consistent with the case caption.

[11] In the motion, third-party plaintiffs stated that they saw no need to revisit the trial court's order granting attorney fees, costs, and service awards.

[12] CDR reiterated its challenges to the attorney fee award based on class counsel's purported failure to segregate fees and costs and "work on which any party represented by Class Counsel was 'successful.'" CDR also objected to the court's failure to provide explanation for the attorney fee award.

[13] Respondents attached a verbatim report of proceedings (VRP) of the hearing on May 3, 2024, in an appendix to its response brief. CDR did not designate these VRPs or object to the appendix. It is evident from the VRP that the trial court, who was covering for motions that had been set before a judge who had retired, was unaware until preparing for the hearing that the parties intended to have the request for attorney fees and the final order heard in tandem. Because the trial court had already approved

The court appointed Cortez, Peltier, and Mosely as class representatives and found that the $87,000 settlement amount for the class members was reasonable consideration for the release of the class' claims against CDR in consideration of "the facts and circumstances of the claims and affirmative defenses asserted in the action, and the potential risks and likelihood of success of pursuing trial on the merits." The court ordered that CDR and Pierce and Gardiner "mutually release each other from all claims relating to or arising out of Pierce and Gardiner's CDR account ending in 3104" and specified that the order is not an admission by CDR, Pierce, and Gardiner of any liability or wrongdoing in this or any other proceeding.

The court acknowledged that it addressed class counsel's request for attorney fees and costs separate from the class fund in its March 2024 order and ordered that the awarded amounts be paid under the terms of the settlement. The court dismissed all claims against CDR, Pierce, and Gardiner with prejudice.

CDR appeals.

## DISCUSSION

### Trial Court's Award of Attorney Fees

CDR first contends that because the trial court dismissed their CPA claim, the court erred in granting attorney fees to Pierce and Gardiner. CDR argues that Pierce and Gardiner cannot claim attorney fees based on a settlement reached between CDR and the class representatives "with whom they share no common claim." We disagree.

To determine whether the trial court properly awarded attorney fees, we apply a two-pronged standard of review. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d

---

the request for attorney fees, the parties at the hearing recognized that CDR had preserved its objections through its previous filings.

1100 (2012). We review the court's initial determination of whether there is a legal basis to award attorney fees de novo. Id. A court may award attorney fees and costs to a party when authorized by contract, statute, or a recognized ground in equity. Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013). If there is a legal basis for awarding attorney fees, we review "a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." Gander, 167 Wn. App. at 647. A trial court abuses its discretion where its decision is manifestly unreasonable, based on untenable grounds, or is based on untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "The party challenging the trial court's decision bears the burden of demonstrating that the award was clearly untenable or manifestly unreasonable." Wash. State Commc'n Access Project v. Regal Cinemas, Inc., 173 Wn. App. 174, 219, 293 P.3d 413 (2013).

Here, class counsel requested the trial court grant attorney fees based on a preliminarily approved settlement agreement between its clients—individual counterclaim plaintiffs Pierce and Gardiner and the CDR class—and CDR. It is undisputed that the agreement signified the termination of ongoing litigation initially stemming from CDR's lawsuit against Pierce and Gardiner to collect an alleged debt. Pierce and Gardiner filed a counter class action suit against CDR for its allegedly illegal assessment of prejudgment interest against tenants. It is this central claim against CDR that Pierce and Gardiner maintained throughout the life of the litigation that gave rise to the parties' settlement agreement,[14] and which provided the basis for the final version of

---

[14] As CDR states in its opening brief, "CDR made a pragmatic decision to end the costly litigation, but only on the condition that Pierce and Gardiner's claims be dismissed with prejudice."

10

the prejudgment interest class approved by the trial court for the purposes of the agreement. As a result of the multi-party settlement, the CDR class agreed to release its CPA claims against CDR in exchange for a class fund of $87,000 and Pierce and Gardiner agreed to release their individual CPA claims in exchange for CDR's discharge of their alleged debt of $17,770.33.

Importantly, CDR confirmed at oral argument it does not dispute that there is a legal basis for the CDR class to be awarded attorney fees under the terms of the settlement agreement. Wash. Ct. of Appeals oral arg., Columbia Debt Recovery, LLC v. Pierce, No. 86812-8-I (April 10, 2025), at 1 min., 48 sec. through 1 min., 55 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025041271/; see Hamblin v. Castillo Garcia, 9 Wn. App. 2d 78, 91, 441 P.3d 1283 (2019) ("Settlement agreements are contracts."). Nor does it dispute that Pierce and Gardiner were parties to the settlement agreement. In CDR's words, it is "not challenging the entirety of the fee award" and "not disputing that the class that settled is entitled to their fee application and that there is a basis under the CPA for an award of fees to that settlement class." Wash. Ct. of Appeals oral arg., supra, at 2 min., 21 sec. through 2 min., 37 sec.

CDR's claim that the legal basis afforded to the CDR class as part of the settlement agreement with CDR does not also extend to Pierce and Gardiner is unpersuasive. CDR's attempt to insulate the CDR class' entitlement to attorney fees by suggesting that, unlike Pierce and Gardiner, the CDR class "prevailed in their CPA claim in settling against CDR" is not supported by the record. Wash. Ct. of Appeals oral arg., supra, at 3 min., 31 sec. through 3 min., 35 sec. As the trial court reiterated in its

order awarding attorney fees, the plain language of the parties' settlement agreement states that the agreement "is for settlement purposes only" and that it shall not constitute or be construed as an admission of violation of law or liability of any kind. The language of the settlement agreement does not condition an attorney fee application based on a party's showing that, if not for settling, the CDR class or Pierce and Gardiner would have established that CDR violated the CPA by charging or collecting prejudgment interest.[15] The settlement agreement also does not condition a potential award of attorney fees based on the specific benefits the parties receive under the terms of the agreement. The record otherwise presents no serious dispute that the efforts initiated and continued by Pierce and Gardiner against CDR's allegedly unlawful conduct led to the favorable outcome of a settlement agreement for themselves in effectively defeating a collection suit and the CDR class' benefit in obtaining a class fund.

Because CDR does not establish that the settlement agreement provides a legal basis for the trial court to award attorney fees to the CDR class and not to Pierce and Gardiner, we cannot say that the trial court abused its discretion in awarding attorney fees to Pierce and Gardiner at this stage in the litigation. For this reason, we need not determine whether Pierce and Gardiner can be considered "prevailing parties" as

---

[15] We note that CDR argued that because it is undisputed that Pierce and Gardiner were charged but did not remit payment for prejudgment interest to CDR, they did not suffer an injury to establish a viable CPA claim to arguably benefit from the settlement agreement based on a common claim with the CDR class. CDR, however, conceded at oral argument that it is not necessary for a plaintiff to have paid an illegal debt to be injured under the CPA. Wash. Ct. of Appeals oral arg., supra, at 6 min., 21 sec. through 6 min., 34 sec; see Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 65, 204 P.3d 885 (2009) (holding that a plaintiff alleging deceptive collection methods under the CPA "need not remand payment to establish injury: other expenses incurred as a result of the deceptive practice may satisfy the injury element").

defined under RCW 19.86.090 where there has been no adjudication of the CPA claim.[16] See Roemmich v. 3M Co., 21 Wn. App. 2d 939, 957, 509 P.3d 306 (2022) ("In reviewing for abuse of discretion, 'we may affirm the trial court on any basis that the record supports.'") (quoting State v. Arndt, 194 Wn.2d 784, 799, 453 P.3d 696 (2019)).

Reasonableness of Attorney Fees

Second, CDR contends that the trial court abused its discretion in determining the amount of the fees. CDR challenges the reasonableness of the attorney fee award on three grounds: (1) the court improperly awarded Pierce and Gardiner attorney fees for unproductive efforts, (2) the court failed to segregate and award fees and costs only for time spent on Pierce and Gardiner's CPA claims against CDR, and (3) the court failed to adequately explain its fee award and respond to CDR's objections. Because the trial court did not enter any findings in support of its reasonableness determination, we agree the court erred.

An attorney fee applicant shoulders the burden of demonstrating that a fee is reasonable. Berryman, 177 Wn. App. at 657 (citing Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 151, 859 P.2d 1210 (1993)). Like the burden of showing overall reasonableness of fees, the party claiming an attorney fee award has the burden of segregating counsel's time. Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004). If attorney fees are only authorized for some of a party's claims, the trial court's attorney fee award must

---

[16] As cited above, we recognize that the trial court expressly based its attorney fee award on its finding that individual counterclaim plaintiffs Pierce and Gardiner, in addition to class representatives and third-party plaintiffs Cortez, Mosely, and Peltier, "prevailed on their claims brought under [the CPA]." However, "an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." Nast v. Michels, 107 Wn.2d 300, 308, 730 P.2d 54 (1986).

show that time spent on issues for which fees are authorized has been extracted from time spent on other issues. Id. at 691. "Where, however, the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees." Id.

"Washington courts apply the lodestar method to determine the starting point for reasonable attorney fees." Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc., 6 Wn. App. 2d 803, 834, 431 P.3d 1018 (2018). "A lodestar award is arrived at by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter." Scott Fetzer Co., 122 Wn.2d at 149-50. The trial court must make a reasoned determination when increasing or decreasing the amount. Peiffer, 6 Wn. App. 2d at 834. Because "'[t]he court must limit the lodestar to hours reasonably expended, [it] should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.'" Id. (alterations in original) (quoting Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597, 675 P.2d 193 (1983) (plurality opinion)).

The trial court need not ploddingly subtract hours to prove to the appellate court that it has taken a sufficiently active role in determining whether time should be deducted for unproductive work. Miller v. Kenny, 180 Wn. App. 772, 823, 325 P.3d 278 (2014). Rather, in determining the reasonableness of an attorney fee award, "'[c]ourts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel.'" View Ridge Ests. Homeowners Ass'n v. Guetter, 30 Wn. App. 2d 612, 647, 546 P.3d 463, review denied, 554 P.3d 1225 (2024) (internal quotation marks omitted) (quoting Berryman, 177 Wn. App. at 657). Though

the trial court is not required to provide an exhaustive hour-by-hour evaluation of each lawyer's time sheets, it must provide insight into its exercise of discretion. Taliesen Corp. v. Razore Land Co., 135 Wn. App. 106, 146-47, 144 P.3d 1185 (2006).

"Trial courts must articulate the grounds for a fee award, making a record sufficient to permit meaningful review." Mullor v. Renaissance Ridge Homeowners' Ass'n, 22 Wn. App. 2d 905, 919, 516 P.3d 812 (2022). This generally means that the court must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the court awarded the amount in question. Id. at 919-20. "The findings must show how the court resolved disputed issues of fact and the conclusions must explain the court's analysis." Berryman, 177 Wn. App. at 658. The appropriate remedy if the trial court does not make findings of fact and conclusions of law supporting the attorney fee award is to remand to the trial court for entry of proper findings and conclusions. Mullor, 22 Wn. App. 2d at 920.

Here, Pierce and Gardiner submitted a purported lodestar attorney fee award of $314,181.21 and requested a lesser amount of $300,000. CDR raised several objections, including that the attorney fees were not segregated and included time spent on unsuccessful efforts. The trial court reduced Pierce and Gardiner's original fee request to an award of $285,520.71 without further explanation, merely finding it "a reasonable lodestar." In response to CDR's objections, the court only stated, "The Court also reviewed CDR's objections to the time. The Court finds the objections without merit."

Pierce and Gardiner argue that the trial court's reduction of the award to $285,520.71 shows the trial court did not unquestioningly accept class counsel's fee

15

affidavits and considered CDR's objections. Specifically, Pierce and Gardiner assert that the $28,660.50 difference between their initially submitted lodestar and the awarded amount indicates the trial court deducted the time class counsel spent on attaining the vacatur of the initial default judgment against Pierce and Gardiner. But the trial court made the reduction without explanation. Looking to the trial court's order, we cannot be sure why or how the court landed on the amount it did.

By failing to show how it arrived at the final attorney fee award amount and failing to enter findings on the specific objections that CDR raised, the trial court abused its discretion. See Mayer v. City of Seattle, 102 Wn. App. 66, 82-83, 10 P.3d 408 (2000). Accordingly, we do not have an adequate record before us to address CDR's substantive challenges to the reasonableness of the attorney fee award.[17] We therefore must remand this matter "for the entry of proper findings of fact and conclusions of law that explain the basis" for the reasonableness of the attorney fee award. View Ridge Ests., 30 Wn. App. 2d at 648.[18]

---

[17] CDR asserts that Pierce and Gardiner should not be awarded any attorney fees for efforts that class counsel made prior to the date that the third-party plaintiffs and class representatives joined the lawsuit. CDR fails to cite to authority to support its proposition that awardable attorney efforts in an evolving putative class action only commence once the final proposed class representatives have been joined. Where no authority for an assertion is cited, we may presume none exists. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

[18] We emphasize that, as we observed in View Ridge Estates,
"[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011). Indeed, "the determination of fees 'should not result in a second major litigation.'" [Id.] at 838 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). We encourage the trial court and the parties to keep as much in mind on remand.
30 Wn. App. 2d at 648-49.

## Attorney Fees on Appeal

Pierce and Gardiner request attorney fees and costs on appeal. RAP 18.1 allows the award of attorney fees on appeal if authorized by applicable law. "A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1." W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985). Because Pierce and Gardiner sustain on appeal their attorney fee award under a settlement agreement, we conclude that an award of attorney fees on appeal is proper. The amount of reasonable attorney fees on appeal awarded to Pierce and Gardiner shall be determined by the trial court on remand, under RAP 18.1(i).

## CONCLUSION

We affirm in part, reverse in part, and remand for the trial court to enter findings and conclusions related to the amount of its award of attorney fees and also to determine a reasonable award for attorney fees on appeal.

_____
Colb... , J.

WE CONCUR:

_____          _____
Birk, J.                                  Smith, J.